CYPRIAN AZAROWICZ, PETITIONER-RESPONDENT, v. METROPOLITAN BEEF COMPANY, RESPONDENT-PROSECUTOR.

Submitted January 29, 1937—Decided April 17, 1937.

Before BROGAN, CHIEF JUSTICE, and Justices CASE and PERSKIE.

For the prosecutor, *Cox & Walburg* (*Arthur F. Mead,* of counsel).

For the respondent, *Herman M. Wilson* (*David Sarbone,* of counsel).

The opinion of the court was delivered by

PERSKIE, J. In this workmen's compensation case, the fact that the employe suffered injuries arising out of and in the course of the employment is not challenged. It is the extent of the injuries claimed by employe and thus the percentage of the total disability allowed him that is contested.

The petitioner, fifty-nine years of age, was employed by the prosecutor as a butcher and salesman. As part of his work he helped deliver beef sold; in so doing he was obliged to and did carry beef weighing one hundred to one hundred and thirty pounds to prosecutor's truck in which it was delivered to the customer. He had worked continuously for the prosecutor for about ten months prior to the accident, at the wage of $25 a week, and prior thereto had worked for another beef concern for about three years.

On February 8th, 1933, while carrying a loin of beef weighing about sixty pounds from another beef house to the truck, in the course of his employment, he was struck by an automobile. As a result thereof, he claimed that he sustained "a fracture of the left ankle;" "internal injuries" and "nervous shock." In addition thereto he claimed, and this is the real controversy, that he also sustained a heart condition, myocarditis. This claim was made to rest on two grounds. First, that it was the direct result of trauma, of having been struck by the automobile, or second, that the accident set in motion or aggravated the pre-existing heart condition.

On the other hand prosecutor contended below, as it contends here, that the heart condition could not have been the result of trauma, nor did the accident aggravate the pre-existing condition thereof. Its claim is that while petitioner was in the hospital he developed either a "cold," "grippe" or "influenza" and although he fully recovered from that illness in a few days, nevertheless, that attack "brought about a decompensation of the heart during the period of the attack and subsequently the heart adjusted itself and came back to the chronic condition that always existed."

Each party offered proof in support of its contention. It is elementary that petitioner was obliged to do more than show that the injuries sustained "could have been" the result of the accident. *Wolfe & Co.* v. *Piplin,* 14 *N. J. Mis. R.* 146; 183 *Atl. Rep.* 187. He was obliged to show that the injuries for which he claimed compensation were in fact caused by the accident. That proof, however, may be direct, circumstantial or presumptive, *i. e.,* based on proper deducible inferences, or both. *Nardone* v. *Public Service, &c., Co.,* 113 *N. J. L.* 540; 174 *Atl. Rep.* 745; *Armstrong* v. *Union County Trust Co.,* 14 *N. J. Mis. R.* 648; 186 *Atl. Rep.* 522; *affirmed,* 117 *N. J. L.* 423; 189 *Atl. Rep.* 138. Thus it has been repeatedly held that, in the absence of direct proof, the best proof, probability and not certainty is the test as to whether an injury resulted from an accident arising out of and in the course of the employment. *Auten* v. *Johnston,* 115 *N. J. L.* 71; 178 *Atl. Rep.* 187; *Jackson* v. *Delaware,*

*Lackawanna and Western Railroad Co.,* 111 *N. J. L.* 487; 170 *Atl. Rep.* 22; *Hercules Powder Co.* v. *Nieralko,* 113 *N. J. L.* 195; 173 *Atl. Rep.* 606; *affirmed,* 114 *N. J. L.* 254; 176 *Atl. Rep.* 198; *Belyus* v. *Wilkinson-Gaddis Co.,* 115 *N. J. L.* 43; 178 *Atl. Rep.* 181; *affirmed,* 116 *N. J. L.* 92; 182 *Atl. Rep.* 873.

The proper and legal proofs adduced for the petitioner show, among other things, that he was always a hard working man; that during his ten months of employment by prosecutor he continually did hard work and did not lose one hour of employment; that prior to his employment by prosecutor he had worked for another beef concern for about three years and during that period of employment he lost but one day's work and this because of a cold; that he successfully passed examinations (although the extent thereof is challenged) about every six months, the last one so passed was in June of 1932, required by the local health authorities for a "food handlers" permit which he was required to obtain and no abnormal heart signs were disclosed in any of these examinations; and that neither he nor his wife ever noticed any symptoms indicative of heart or any trouble.

In addition petitioner offered medical proof. These experts examined him physically. One, a cardiologist of many years experience, also made a fluroscopic examination, took an X-ray film of his chest and made an electrocardiagram. All of these experts testified, in substance, and there is no objection to the form of the questions propounded to them, that trauma not only could cause but did cause the myocarditis suffered by petitioner and that the accident did set in motion or aggravate that condition if it did in fact pre-exist; that petitioner could not have engaged in the hard work for the time that he did without some indication that he had heart trouble, and that petitioner was permanently disabled to the extent of seventy-five per cent.

Some proof was adduced for the prosecutor to indicate that petitioner suffered at times from shortness of breath when doing heavy work; that petitioner made no complaint of any injury to his chest when admitted to the hospital; that there

was no evidence of a blow on his chest; that when he did complain about a pain in the chest a few days after his admission to the hospital he said that the pain was in the right side of his chest.

In addition thereto medical experts for prosecutor testified that trauma did not cause the myocarditis in the first instance and that the accident did not, because of the lack of severity of this trauma to his chest, and other circumstances here exhibited, set in motion or aggravate the condition of the heart but, that the myocarditis was the proximate result of the "cold," "grippe" or "influenza" attack suffered by petitioner while in the hospital.

At this posture of the proofs, the bureau found that petitioner suffered a twenty per cent. loss of his left foot and that the heart condition or the aggravation thereof was in nowise related to the accident. On appeal to the Essex County Common Pleas Court it was there found "that the injury sustained by the petitioner was the proximate and producing cause of *disabilities now existing,* which I find to be the extent of seventy-five per cent. of permanent total disability." (Italics supplied.)

This court allowed a writ of *certiorari* to review that finding.

Prosecutor's contentions (embraced in its three grounds of appeal) are that the petitioner did not sustain the burden of proving that the injuries which he sustained were the "proximate and producing" cause of his disability, and that there is no competent or legal proof to sustain the extent to which the award was increased.

The holding of the Pleas is not as specific as it might have been. But one conclusion is unescapable, it is in fact conceded, and it is that the myocarditis suffered by petitioner fully disclosed itself before petitioner left the hospital where he was taken immediately after the accident, and that he was then as he is now permanently afflicted with that condition. Thus when the court referred to "disabilities now existing" it necessarily included his then heart condition. There is no claim that the fractured ankle alone justifies the increase

of disability allowed by the Pleas. And while it is pointed out that the finding of the Pleas lacks definiteness, yet the real and meritorious question involved is fully recognized and ably argued by counsel of the respective parties.

We do not find it necessary to determine whether trauma, whether the accident did, in the first instance, cause the heart condition.

True, it is rather difficult to understand, unless we refuse to give credence to petitioner's proof and there is no basis for so doing, how the petitioner could have continuously engaged in laborious work that he did and at the same time fail to observe any symptoms of heart trouble. But we rather think that the proofs afford a rational basis for the conclusion that if petitioner was afflicted with a heart condition prior to the accident that he had no knowledge thereof. But let us assume that he had a heart condition prior to the accident: Concededly it was dangerous, but it was undeveloped. We, therefore, think that, under the circumstances here exhibited, the accident is compensable. We base that determination upon the well established principle that where an accident arising out of and in the course of the employment sets in motion or aggravates an undeveloped and dangerous physical condition, viz., a pre-existing condition, it is properly classable as the proximate cause of the fatality or ailment. *Pisko* v. *Nelson,* 4 *N. J. Mis. R.* 154; 132 *Atl. Rep.* 301. *Cf. Furferi* v. *Pennsylvania Railroad Co.* (*Court of Errors and Appeals,* 1936), 117 *N. J. L.* 508, and especially cases collated there at pages 511 and 513; 189 *Atl. Rep.* 126.

We find as a fact that the proofs fully support the determination that the accident set in motion, or aggravated petitioner's heart condition. Thus we hold that the proofs amply support the result reached by the Common Pleas Court. *Geizel* v. *Regina Co.,* 96 *N. J. L.* 31, 33; 114 *Atl. Rep.* 328; *affirmed,* 97 *N. J. L.* 331; 116 *Atl. Rep.* 924; *Kauffeld* v. *G. F. Pfund & Sons,* 97 *N. J. L.* 335; 116 *Atl. Rep.* 487.

The writ is dismissed, with costs.