MARY A. DUNN, PETITIONER-DEFENDANT IN CERTIORARI, v. CITY OF ATLANTIC CITY, RESPONDENT-PROSECUTOR IN CERTIORARI.

Submitted October 5, 1937—Decided April 29, 1938.

Before BROGAN, CHIEF JUSTICE, and Justices TRENCHARD and PARKER.

For the respondent-prosecutor in *certiorari, Carroll & Taylor (A. Millard Taylor,* of counsel).

For the petitioner-defendant in *certiorari, Gaskill & Rosenberg (Abraham Rosenberg,* of counsel).

The opinion of the court was delivered by

TRENCHARD, J. This writ brings up for review a judgment of the Atlantic Common Pleas Court in a workmen's compensation case in favor of the petitioner.

The situation was this: The petitioner's husband met with an accident on April 18th, 1935, resulting in hernia, while in the employ of the respondent, and an award was made him by the workmen's compensation bureau on April 7th, 1936, for temporary disability and the privilege of securing an operation for the hernia. Pursuant to that order, the husband was operated on for hernia on May 7th, 1936, in the Atlantic City Hospital by Dr. David B. Allman. On May 18th, 1936, Dr. David W. Scanlon was called in by the operating surgeon to treat the patient for a medical condition, relating to the involvement of the kidneys, which had developed. Dr. Scanlon treated him daily in the hospital until May 27th, 1936, and then for economic reasons removed him to the patient's home and continued daily treatments there until the date of his death on June 10th, 1936. The petitioner then filed this petition claiming compensation for his surviving dependents consisting of the petitioner and an infant daughter, averring that the decedent's death was occasioned by complications arising from the operation for hernia and hence was the result of the injuries sustained in the accident of April 18th, 1935. The workmen's compensation bureau dismissed that petition saying that it was not convinced that the decedent's death was actually the result of the operation. The petitioner then appealed to the Common Pleas with the result that the Court of Common Pleas set aside the determination of the bureau and entered judgment in favor of the petitioner and the infant child in accordance with the prayer of the petition, together with a counsel fee.

We think that was right. It was shown without contradiction that the decedent up until April 18th, 1935 (the date of the accident upon which the decedent sustained the original hernia) was in normal health; that he worked regularly; that he was under no doctor's care; that he had received no hospital treatment; in other words, up to the time of the occurrence of the hernia, decedent, who worked as a steamfitter and plumber regularly, was in apparent good health. After April 18th, 1935, up until the date of the operation, the decedent constantly complained of pain. Four or five

days after the operation he became worse and irrational, according to the testimony of the petitioner.

Dr. Scanlon testified that when he was called in on May 18th, 1936, by Dr. Allman, to treat decedent for a medical condition, the patient was running a fever and was delirious. He testified that decedent as a result of the shock of the operation for hernia, died of nephritis which theretofore had been dormant and "had not shown itself." He testified that the shock of this major operation precipitated a fatal stage causing death. He did not say that the operation caused his death, nor did he say that the operation should not have been performed. He testified that the operation was skillfully and carefully done, but he does say that the operation was shock enough to precipitate a fatal stage of nephritis theretofore dormant.

Dr. Scanlon based his opinion upon the physical condition in which he found decedent and upon the entire history of the case, and it is important to remember that he was the only *medical physician* involved in the case who actually saw and treated the decedent. The testimony seems to be quite conclusive that the cause of death was nephritis and herniotomy, and such was the death certificate.

The testimony as to decedent's apparent good health prior to the accident was undisputed and convincing. The only disputed testimony is whether or not the accident causing the hernia and necessitating the operation caused such a shock as precipitated the patient's physical condition, ultimately resulting in his death. Dr. Scanlon's considered opinion was that it did. He further testified that if the decedent had not had the shock of that hernia operation, which affected the dormant nephritic condition, he would have gone on living a natural life perhaps for many years.

It is true that Dr. Allman, the surgeon who performed the operation, testified that the operation did not produce a shock *sufficiently* to cause decedent's death; that the patient apparently improved after the operation and then became a medical case, running a fever and delirious.

It is also true that Dr. Salassie, who had never seen the patient, called by the respondent to give expert testimony, testified that there was no evidence from the patient's chart and from such history of the case as ·had been laid before him, of any shock at all, and in effect that he showed a temporary improvement for a time; that a dormant kidney condition became progressively worse, from which the patient died.

The court below determined as a question of fact that the testimony in its entirety showed that death was occasioned by a complication resulting from the operation for hernia and was the result of the injuries sustained on October 18th, 1935, from an accident arising out of and in the course of his employment.

We think that such finding of fact was justified by the great weight of the evidence.

Now the pertinent rule to be extracted from the cases is this: Where, as here, a workman sustains a hernia from an accident arising out of and in the course of his employment, which injury necessitates a surgical operation, which operation results in a shock which "lighted up" a dormant condition of nephritis which had theretofore not shown itself, and which, but for the accident would not have ensued, and which disease results in his death, a finding that the death was in fact the result of the injury and was an accident within the meaning of the Workmen's Compensation act, was justified, even though it was not the natural result of the injury. *Geizel* v. *Regina Co.*, 96 *N. J. L.* 31; *affirmed*, 97 *Id.* 331; *Winter* v. *Atkinson-Frizelle Co.*, 88 *Id.* 401; *Voorhees* v. *Schoonmaker Co.*, 86 *Id.* 500; *Lundy* v. *Brown & Co.*, 93 *Id.* 107.

Tested by that rule, and considering all of the evidence, the finding of the trial judge that death resulted from an accident arising out of and in the course of his employment, was justified.

The judgment below will be affirmed, with costs.