New Jersey Department of Labor,
Workmen's Compensation Bureau.

## MOZELLE PATTERSON, PETITIONER, v. HARRY RYNAR, RESPONDENT.

Decided May 20, 1940.

For the petitioner, *Harry Krieger.*

For the respondent, *Francis X. Kenneally.*

\*       \*       \*       \*       \*       \*       \*

I find from the proofs that the respondent is a contractor engaged in the construction business. He had contracted to remove stucco from a building situate at No. 118 Fourth avenue, East Orange, New Jersey, and on April 28th, 1938, he and several workmen were so engaged. Patterson was one of the workmen on the job. It was Patterson's duty to rip stucco from the side of the building by the use of a crowbar.

On that day—Apirl 28th, 1938—at about eleven-thirty A. M., Patterson was engaged in the performance of this task and was standing in an alley about two or two and one-half feet wide, formed by the side of the building upon which he was working and the building next adjoining it, when a mass of stucco some distance above him, which apparently had

become loosened, fell from the side of the building on which he was working, striking Patterson about the stomach and crushing him against the wall directly in back of him.

As a result of the accident, Patterson sustained injuries to his back over his right kidney, over the lumbo-sacral area of his back and to his sacro-spinalis muscles situated anatomically in close proximity to the kidney area. After resting for awhile, Patterson continued to work as best he could—for about one-half hour—until noon, at which time, complaining that his pain was severe and that he felt sick, he applied to his foreman for leave to quit his job and go home. Permission was granted and Patterson left for home. On reaching home, Patterson immediately went to bed. He remained in bed until April 30th, 1938—two days after the accident—complaining of acute pain in the back over the right kidney. In the evening of April 30th, 1938, the pain not having subsided, he was taken to the office of Dr. Benjamin Polow in Newark, New Jersey, by automobile. His condition was such that he had to be helped from his bed, supported under each arm by other persons, into the automobile in which he was removed to the doctor's office. According to Dr. Polow, who testified for the respondent, when he first saw Patterson, he was suffering from severe abdominal pains, pain in the back, especially in the region of the right kidney and lower lumbar regions. Patterson told Dr. Polow that he had vomited at times and that his urine was reddish in tinge. Dr. Polow found his condition to be such that he ordered Patterson's immediate hospitalization. Patterson went directly to the Newark Beth Israel Hospital from the doctor's office. He was taken there in a car by his foreman, who had driven him to the doctor's office.

\*　　\*　　\*　　\*　　\*　　\*　　\*

Patterson remained in the hospital until May 5th, 1938, when, according to the hospital record, he was "allowed to go home to bed." His condition on leaving the hospital, as shown by the record of that institution in evidence, reads, "tenderness over right kidney region still present—still has pain over right sacro-spinalis muscles—bending and turning still accomplished with difficulty—to be seen at home." He

was seen at home and received treatment from Dr. Polow for almost three months—until July 23d, 1938. Dr. Polow prescribed a belt for him to wear for support and estimated his disability on July 23d, 1938, to be "fifteen per cent. of the back." At the time this estimate was given, Dr. Polow testified that Patterson "still had tenderness on pressure over right kidney region and over the right recto-spinæ muscles."

It is uncontradicted that after his accident Patterson did not return to work for the respondent, nor that he did not do any other hard, laborious work until his death. The respondent urges that he worked in a grocery store following his accident. One of the co-owners of the grocery store, a relative of the decedent, was produced before me and testified that Patterson never worked there. It appeared that Patterson lived with the co-owners and some times sat around the store when his condition of health permitted. He did no work. He received no wages, compensation or other returns for any work at the grocery store. The petitioner, it appears, did work there. She fully supports the co-owner's version.

Patterson never recovered from the effects of his injury. He became broken down in his general health and went into a steady decline. He was never free from illness following the accident. On January 24th, 1939, he died in St. Michael's Hospital, Newark, New Jersey, of an inflammatory condition of the kidneys and an enlarged heart. The cause of death as stipulated by the parties and established by the post-mortem examination, was chronic glomerulo-nephritis and hypertensive heart disease. I find from the testimony, that from April 28th, 1938, the date of his injury, until January 24th, 1939, the day of his death—a little less than nine months—that he grew progressively worse until he died. This despite hospitalization in Newark Beth Israel Hospital, active post-hospital treatment by Dr. Polow for almost three months, medical care and attention of Dr. John J. Williams, and hospitalization in St. Michael's Hospital.

There was admitted in evidence without objection, a record of proceedings in the compensation bureau on August 9th, 1938, which has received my careful consideration. From the pleadings in that proceeding and the record, it appears that

Patterson made a claim for compensation arising out of his injuries on April 28th, 1938. This claim originated with a petition dated May 10th, 1938. Patterson was then still under Dr. Polow's treatment. He continued to be treated by Dr. Polow until July 23d, 1938—more than two months later. That claim was compromised between the parties on August 9th, 1938. By the terms of the compromise, respondent stipulated that judgment be entered against him for disability, temporary and permanent, and for expenses of medical care and attention and certain other fees. The stipulated judgment provided that Patterson receive partial permanent disability for fifty weeks, which is equivalent to ten per cent. of total disability. This was in addition to temporary disability of twelve weeks. He died after he had collected about one-half of the partial permanent disability awarded to him.

\*        \*        \*        \*        \*        \*        \*

The respondent controverts petitioner's right of recovery on the ground that Patterson's death was not due to the accidental injuries sustained on April 28th, 1938; that those injuries neither caused nor accelerated Patterson's death from the causes mentioned.

If petitioner's right to recover depended upon proving that the injuries caused chronic glomerulo-nephritis and hypertensive heart disease, the diseases from which Patterson died, there would be substantial merit to respondent's contention. By the greater weight of the medical testimony adduced, as evidenced by the opinions of the experts produced by the respondent, particularly Dr. W. Kenneth Wheeler, a qualified urologist, and Dr. Salvatore Rose, a recognized pathologist, I am satisfied that the primary cause of death—chronic glomerulo-nephritis and its frequent concomitant hypertension—are not due to trauma. Both of these doctors point with cogent reasoning to the fact that the post-mortem examination revealed a bilateral involvement of the capillary tubules or glomeruli of both kidneys. In other words, that both kidneys showed inflammation and pathology while the accident involved a local trauma to the right kidney alone. Based on these observations, they conclude that trauma did not cause the diseases which terminated in death.

But, petitioner does not rely on the questionable relation between chronic glomerulo-nephritis and trauma where the nephritis is observed and diagnosed for the first time following the injury. She does not seek to establish that trauma caused chronic glomerulo-nephritis.

She admits the existence of diseased kidneys independent of trauma. Her theory is aggravation of this admittedly diseased condition. It will be seen that the issue therefore resolves itself to one of causal relation. Did the accident set in motion, aggravate, hasten or accelerate an undeveloped dangerous pre-existing physical condition which terminated in death? If it did, it is properly classable as the proximate cause of the fatality. *Pisko* v. *Nelson,* 4 *N. J. Mis. R.* 154; 132 *Atl. Rep.* 301. *Cf. Furferi* v. *Pennsylvania Railroad Co. (Court of Errors and Appeals,* 1936), 117 *N. J. L.* 508, and especially cases collated there at pages 511 and 513; 189 *Atl. Rep.* 126, 127. *Azarowicz* v. *Metropolitan Beef Co. (Supreme Court,* 1937), 118 *N. J. L.* 89; 191 *Atl. Rep.* 483.

If a reasonable inference can be legitimately drawn from the evidence and circumstances adduced, that the death of the employe was caused by or attributable to the accidental injuries sustained on April 28th, 1938, the petitioner may recover. The burden of proof rests upon the petitioner to establish her rights to compensation. *Bryant* v. *Fissell,* 84 *N. J. L.* 72; 86 *Atl. Rep.* 458, 460; *Lundy* v. *Brown & Co.,* 93 *N. J. L.* 107, 108; 106 *Atl. Rep.* 362; *affirmed (Court of Errors and Appeals),* 93 *N. J. L.* 469; 108 *Atl. Rep.* 252.

Petitioner is not required to prove her case to a medical certainty. The test is probability rather than certainty. *Jackson* v. *Delaware, Lackawanna and Western Railroad Co.,* 111 *N. J. L.* 487; 170 *Atl. Rep.* 22. It will suffice if the proofs show that the employment contributed to the injury or death. *Ciocca* v. *National Sugar Refining Company of New Jersey (Court of Errors and Appeals),* 124 *N. J. L.* 329; 12 *Atl. Rep.* (2d) 130; *Bollinger* v. *Wagaraw Building Supply Co.,* 122 *N. J. L.* 512, 520; 6 *Atl. Rep.* (2d) 396, 401; *Cf. Hentz* v. *Janssen Dairy Corp.,* 122 *N. J. L.* 494; 6 *Atl. Rep.* (2d) 409; *Douglass* v. *Riggs Disler Co.,* 120 *N. J. L.* 583; 1 *Atl. Rep.* (2d) 207; *affirmed,* 122 *N. J. L.* 379; 5 *Atl. Rep.* (2d) 873.

With these guiding principals in mind, I find that the evidence fully justifies an award in favor of the petitioner.

Credible evidence was adduced on behalf of the petitioner which stands uncontradicted, from which it appears that up to the time of the accident Patterson was a strong, healthy, hard-working man, without any indication of the diseases from which he died. He had been accustomed to doing laborious work. In the past he had worked as a farm hand. More recently, he had done the hard, laborious work generally allotted to laborers in the construction business. Except for an occasional "cold," he had not been sick in bed nor had he ever been hospitalized prior to April 28th, 1938. He never had the care or attention of a physician, nor had he lost any time from work on account of illness. It appeared that he was ready, willing and able to work and actually did work whenever work was to be had. He was entirely free of the symptoms which arose following his accident and of which he complained from that time to the time of his death, viz., backaches, dizziness, nausea and weakness.

\*      \*      \*      \*      \*      \*      \*

In my opinion, despite the fact that decedent was a victim of a long-standing chronic glomerulo-nephritis, which was well advanced, and the accompanying enlargement of the heart, he was able to do hard work. The record of the autopsy by Dr. Rose, admitted in evidence, shows that Patterson was a man of good muscular development. This lends color and support to petitioner's claim that decedent was a hard worker and active. It is well known that the kidneys and the heart are both compensating organs. Patterson sustained a severe trauma and despite hospitalization, bed-rest, continuous treatment for three months by Dr. Polow and subsequent treatment by other doctors, he died less than nine months after the accident.

I find that the accident adversely influenced the already weakened kidneys and hastened the death. There appears to be an abundance of competent evidence from which a reasonable inference would lie, that the nature of decedent's injuries were of such seriousness as to greatly impoverish his

system and predispose it to the inroads of the pre-existing glomerulo-nephritis and hypertension of which there was no apparent indication before the accident. For, as I have already observed, according to the testimony, the decedent before he was injured, was a man in apparent good health and vigor. Immediately after, he began to fail and grow weaker from day to day without any other apparent cause than from the injuries sustained by him; and as the cause of his death was glomerulo-nephritis and hypertension, it is difficult to escape the conclusion that the cause of death was an incident resulting from the accident.

Even if we assume that these pre-existing diseases are independent competent producing causes of death, we are still confronted with the situation that a strong vigorous hard-working man without any apparent indication of glomerulo-nephritis or hypertension, develops serious symptoms of these diseases for the first time after a violent trauma. It seems to me, therefore, that there is a permissible inference in these facts that the death from glomerulo-nephritis and hypertension on January 24th, 1939, was superinduced by the injury, or at the least, that the accident was an element in the excitation and acceleration of the disease or sickness which resulted in death. *Lundy* v. *Brown, supra.*

After carefully analyzing the entire testimony, the conclusion is inescapable that there is in this case, an unbroken chain of events revealing a reasonably accurate history of cause and effect, and tending to establish the following:

1. Good health with apparent freedom from kidney and heart disease symptoms prior to April 28th, 1938—the date of the accident.

2. A violent trauma on April 28th, 1938, with localized injury to the right kidney and back in the kidney area.

3. A diminished resistence and a lowering of the vitality beginning with that date, despite hospitalization, bed-rest and active medical care and therapeutic measures.

4. The development of acute kidney symptoms and symptoms of hypertension, followed by an unbroken continuity of physical degeneration of the former apparent vigorous constitution immediately following the injury and continuing until

5. Death.

The burden of proof resting upon the petitioner to establish her right to compensation, has been met. The evidence adduced furnishes a basis of rational inference, tantamout to legal proof of the fact that decedent's death and the disability which preceded it resulted from the accident which arose out of and in the course of his employment.

I find, therefore, that the petitioner is entitled to the benefits of the Workmen's Compensation act as the surviving wife who lived with the decedent at the time of the accident and to his death, and was the sole dependent of the decedent.

\*        \*        \*        \*        \*        \*        \*

HARRY S. MEDINETS,
*Deputy Commissioner.*