PASSAIC COUNTY COURT OF COMMON PLEAS.

LEONORA SCHUMACHER, PETITIONER-APPELLEE, v. WRIGHT AERONAUTICAL CORPORATION, RESPOND-ENT-APPELLANT.

Decided January 15, 1946.

For the petitioner-appellee, *George F. Losche.*

For the respondent-appellant, *John W. Taylor.*

DELANEY, C. P. J.   In this compensation case, petitioner-appellee, hereinafter called the petitioner, claims compensation for an operation which she alleges was made necessary because her work aggravated an already existing physical condition—*Azarowicz* v. *Metropolitan Beef Co.,* 118 *N. J. L.* 89; 191 *Atl. Rep.* 483; *Matthews Construction Co.* v. *Ranallo,* 13 *N. J. Mis. R.* 878; 181 *Atl. Rep.* 901; *affirmed,* 117 *N. J. L.* 148; 187 *Atl. Rep.* 372; *Dougherty* v. *Miller,* 14 *N. J. Mis. R.* 229; 183 *Atl. Rep.* 904; *affirmed,* 117 *N. J. L.* 454; 189 *Atl. Rep.* 137; and the questions involved are, did petitioner sustain the burden of proving an injury by accident arising out of and in the course of her employment? and did said injury result in the condition for which she claims compensation?

Petitioner was engaged by respondent-appellant, hereinafter called the respondent, a manufacturer of airplane motors, as a tester, which necessitated the setting up of an engine by hoisting it to a stand. The hoisting of the engine requires approximately a 75-pound pressure, which the operator exerts by pulling on the hoist attached to the engine. The operator starts in an upright position and pulls until she is in a squatting position, feet about one and one-half to two feet apart.

On September 8th, twenty days before the alleged injury, the petitioner had consulted her physician, Dr. Pindar, about pains in her lower abdomen and had been treated for a retroverted uterus. She was given conservative routine treatment twice a week, of packing, to bring down the swelling of the organ and to replace it into position. The series of treatments was not completed, because on September 28th petitioner's condition was worse and the history of fainting spells so bad that Dr. Pindar advised an operation which, after consultation with a specialist, was performed.

On the morning of the 28th, as petitioner was hoisting an engine into place, she felt very severe pain, as if "everything were falling out." She went to the control room, sat upon a stool, and shortly afterwards fainted. She was carried to the plant hospital at 8:25 A. M. and at 11 A. M. sent home in the plant ambulance. She dressed, was driven to Dr. Pindar's office, where she was in a state of shock. She does not remember being taken from the control room to the hospital. She had had fainting spells on the 21st and 23d, caused by pressure on the ovary.

There is contradictory testimony as to whether or not the petitioner worked the morning of the alleged injury. Petitioner testified that she reported to work at the usual time, 7:15, that she was feeling all right until she started to hoist the engine. Her supervisor testified that she reported to his desk late, at 7:35, said she was not feeling well, and that he sent her to work in the control room, to do pencil work. About twenty minutes later he walked into the control room and found petitioner in a faint; that her clothes were clean.

A fellow tester testified that petitioner's clothes were dirty and "everything about her was an indication that she had been working. I mean, your hair gets messed up, your face and hands get dirty; your clothes are dirty—anything coming in contact with the hoist."

The plant records are definitely not dispositive as to whether the petitioner did or did not hoist the engine on the 28th. The testimony of the other witnesses is no aid in establishing this point.

The petitioner's contention is that the hoisting of the engine on the 28th aggravated her condition and necessitated an operation. Dr. Pindar testified that the retroversion was more marked on the 28th and that its condition was aggravated by the work petitioner did, for any pulling, lifting, or shoving had a natural tendency to relax the ligaments.

Dr. Bohl testified for the respondent and said that petitioner's work had no causal connection with her operation, for in pulling as she did she did not use ligaments which support the uterus. He accounts for the acuteness of her condition on the 28th as due to a rundown condition.

Dr. Meneve, a gynecologist, testified as an expert for respondent, and said that in his opinion strain on lifting would not be reflected on the uterine ligaments; that retroversion of the uterus is "progressive" and does not occur spontaneously; that there was no causal connection between her work and her condition on the 28th, because "her uterus wasn't any more retroverted before the accident than it was after the accident or *vice versa;* she had a retroversion."

Now, these two statements seem contradictory, for if this condition is "progressive," how can a physician say it can be no more retroverted? The petitioner's consulting and attending physician, besides, testified that on the 28th the retroversion was more marked.

Where there is contradictory medical testimony, it is reasonable to give greater weight to the consulting physician's testimony, especially where, as here, she was also the treating physician and knew the petitioner's condition before the date of the accident. *Markiewicz* v. *International Milk Co., Inc.,*

19 *N. J. Mis. R.* 57; 17 *Atl. Rep.* (*2d*) 158; *Dunn* v. *Atlantic City*, 120 *N. J. L.* 141; 199 *Atl. Rep.* 5; *affirmed*, 121 *N. J. L.* 588; 3 *Atl. Rep.* (*2d*) 583.

We find that the weight of the evidence establishes the fact that petitioner did report to work that morning in her usual capacity of engine tester and was so engaged until she became unable to continue, and, therefore, she sustained the burden of proving an injury by accident arising out of and in the course of her employment, and that that injury necessitated the operation for which she claims compensation.

As to the award given by the deputy commissioner, both temporary and permanent, we find that there is testimony to support his findings.

The judgment of the Workmen's Compensation Bureau is affirmed.