10 N.J. Super. 258 (1950)
77 A.2d 42
ERIC DONOFRIO, PETITIONER-APPELLEE,
v.
HAAG BROTHERS, INC., RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 13, 1950.
Decided November 27, 1950.
*260 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. Arthur F. Mead argued the cause for appellant (Messrs. Cox & Walburg, attorneys).
Mr. Charles Wm. Kappes argued the cause for appellee (Mr. A. Michael Lepore, attorney).
The opinion of the court was delivered by WILLIAM J. BRENNAN, JR., J.A.D.
The employee in this workmen's compensation case is a butcher. He strained his back on February 10, 1947, while lifting an 80-pound hog.
The first of his two claim petitions for compensation was filed on an undisclosed date in 1947. The claim was settled under an agreement stipulating his permanent disability as 7 1/2% of total. The agreement was approved by an "award" entered October 31, 1947, in the Workmen's Compensation Bureau.
His second petition was filed February 16, 1949. His brief erroneously treats this petition as filed under R.S. 34:15-27 for modification of the "award" of October 31, 1947, to seek an allowance for increased disability. That "award" was in essence a mere agreement of compromise, approved by the Bureau, and is, therefore, not a "formal award" within the intendment of R.S. 34:15-27. The second petition, as appellant employer concedes, is to be viewed as an application for an original determination of the merits of the employee's statutory claim for compensation, a determination to which the statute entitled the employee. Streng's Piece Dye Works, Inc., v. Galasso, 118 N.J.L. 257 (E. & A. 1937). If the second petition were to be looked upon as brought under R.S. 34:15-27 to modify the "award" based upon an after-occurring increase in disability, its dismissal would be required because the record lacks the necessary proofs to permit comparison of his condition and disability on the two dates, proofs which are essential to support a petition for an increased disability allowance. Hopler v. Hill City Coal & Lumber Co., 5 N.J. 466 (1950).
*261 Hearings on the second petition were held May 23, July 11 and July 25, 1949. A formal award was entered September 22, 1949, determining the employee's permanent disability to be 7 1/2% of total. A sum based on such disability had been paid in compliance with the "award" of October 31, 1947; for that reason, the formal award of September 22, 1949, provided expressly "that the petitioner is not entitled to any further permanent or temporary disability."
The workman appealed to the Hudson County Court which evaluated the evidence as entitling him to an award of 17 1/2% of total, and on March 11, 1950, the judgment under appeal so ordering was entered. The judgment also allowed Dr. Ajamian a fee of $200 for medical services to be paid by the employer. This appeal challenges the judgment in both particulars.
Appellant asks us to determine as between the percentage adjudged by the Deputy Director and that adjudged by the Hudson County Court and say the former's determination was right and the latter's was wrong. We have the impression appellant would cast this court in the role of umpire to select between the differing findings. This approach misconceives the authority of the County Court in a workmen's compensation case and the duty of this court in reviewing the County Court's judgment on appeal.
Originally the former Court of Common Pleas, to which the County Court succeeded, was the tribunal for the trial of elective compensation cases, P.L. 1911, c. 95, p. 134. The trial judge was authorized "to hear and determine such disputes in a summary manner, and his decision as to all questions of fact shall be conclusive and binding," Ibid., § 18, p. 142, which provision did not, of course, limit the jurisdiction of the former Supreme Court by certiorari.
A Workmen's Compensation Bureau in the Department of Labor was created by P.L. 1918, c. 149, § 3, pp. 429-430, Zietko v. N.J. Manufacturers Casualty Ins. Co., 132 N.J.L. 206 (E. & A. 1944), and was vested with "exclusive jurisdiction" (section 3) of all such claims and authorized "to hear *262 and determine the matter in dispute in a summary manner" (section 10, as amended by P.L. 1921, c. 229, § 3). The Bureau's judgment, however, was not to be final and conclusive if appealed (section 11). The Court of Common Pleas, in considering the appeal, while required to make its determination "exclusively on the transcript of the record and testimony" before the agency (section 19, as amended P.L. 1921, c. 229, § 7, pp. 734-735), nevertheless continued to have the duty originally imposed by section 18 of the 1911 act; the 1921 act provided in substantially the same language as the 1911 law that the court "shall in a summary manner decide the merits of the controversy, and the judgment of the Court of Common Pleas, on any such appeal, shall be conclusive and binding * * * provided, that nothing herein contained shall be construed as limiting the jurisdiction of the Supreme Court to review questions of law and fact by certiorari.
It appears clear from this statutory history the Legislature in creating the Workmen's Compensation Bureau did not clothe that agency with the controlling authority to make factual findings in cases appealed to the Pleas, but continued that authority and duty undisturbed in the County Court; the burden of conducting the hearings, however, was delegated to the agency.
The County Court should, of course, consider the agency's findings of fact and give due, although not necessarily controlling, regard to the opportunity of the agency to judge of the credibility of witnesses.
It is clear, moreover, the factual findings to which determinative weight is in the first instance to be accorded by this court are the findings of the County Court. We on our part approach the review of the County Court's judgment on that premise. Of course, we are empowered under Rule 3:81-13 to review the facts and make independent findings thereon (cf. Rules 1:2-20 and 4:2-6) and, while this power is permissive and a litigant may not as a matter of right require our exercise of it, we do not hesitate to employ it *263 where the ends of essential justice will be served by our doing so. In determining whether to accept the findings of the County Court or to make new findings, however, we give the determinative weight to the County Court's findings we have been discussing and will not reverse unless satisfied from our reading of the record the interests of justice require reversal.
The instant case is not complicated by any issue of credibility of witnesses. Both the Division of Workmen's Compensation and the Hudson County Court appear to have accepted the testimony of all witnesses as credible; the difference between them lies in the evaluation each made of the evidence. We then examine the record, not to select between the two conclusions, but, giving the required weight to the County Court's determinations of fact, to say whether and to what extent, if at all, the interests of justice require that we review the facts and make independent findings thereon.
The employee remained away from work for a month following the accident and was treated by Dr. Ajamian almost daily during that time. His condition during the month was one of numbness, which was replaced about the time he returned to work with pain in his lower back, mostly on the left side, which tightened up with prolonged standing or sitting and which persisted and was still being experienced by him at the time of the hearings. The continuous pain caused his weight to fall from 180 to 167 pounds and forced him in July, 1947, to quit his job with appellant and to take light work with another employer at a substantially reduced wage. Dr. Ajamian's diagnosis was lumbrosacral strain, left sciatica, myofibrosis of left lumber region. The doctor testified he treated the employee continuously from the time of the accident to the date of the May 23rd hearing on a total of 330 occasions, at the employee's home during the first month, and thereafter at the doctor's office. The doctor admitted he was baffled by his patient's failure to respond to treatment.
Following the May 23rd hearing, and on July 20, 1949, the employee was examined by his witness, Dr. Reilly, who diagnosed the cause of the continuing pain to be a ruptured *264 intervertebral disc. This diagnosis was based on physical examination alone. Dr. Reilly recommended a myelography be done to confirm his diagnosis but apparently the employee did not follow this advice. Appellant contends the physical examination was insufficient to support the diagnosis and also challenges Dr. Reilly's qualifications. The County Court viewed the evidence as satisfactorily establishing the doctor's qualifications, and evaluated his testimony given on July 25th as entitled to considerable weight, with which conclusion the Deputy Director does not seem to agree. We perceive no reason to disagree with the County Court's findings in either respect.
Dr. Ajamian was recalled to the stand July 25, 1949, and said that, while he had not diagnosed the ruptured disc, he was now thinking, in light of Dr. Reilly's conclusions, a ruptured intervertebral disc was the explanation for the employee's continuing pain. He also said he had discharged his patient after the first hearing, as he could not help him further, and said he had advised the employee to get a short wave therapy machine and treat himself.
Dr. Visconti supplied the only medical testimony on behalf of appellant. He testified he had examined respondent on July 28, 1947, and May 23, 1949. His diagnosis was of a sprain of the lower back in the lumbrosacral area. He estimated a permanent disability of three per cent of total on both occasions. The County Court appraised the doctor's testimony as too meagre to preponderate over the testimony of Doctors Ajamian and Reilly in light of the employee's testimony, corroborated by his wife as to the persistent pain.
Our review of the evidence does not persuade us the County Court's evaluation of the extent of respondent's permanent disability was without sufficient support in the testimony; accordingly we see no reason to disturb the County Court's judgment.
At the time of the compromise settlement, approved October 31, 1947, appellant agreed to pay and did pay the employee $50 to cover Dr. Ajamian's services. The doctor sought an allowance at the hearings on the second petition *265 of $732 for his services in treating the workman on 330 occasions. The Deputy Director referred the matter of reasonable value of his services to the Hudson County Medical Society for consideration but it does not appear any report was made by that Society. The County Court found the treatments given were "beyond those necessary" and fixed $200 as their reasonable value, to be paid by the appellant.
Appellant does not question the services were of the reasonable value of $200, but argues it cannot be made responsible in any amount in excess of $50, relying upon the provision of R.S. 34:15-15, which provides that no amount in excess of $50 shall be allowed "unless the injured workman or the physician who treated him, or any other person on his behalf, shall file a petition with the Workmen's Compensation Bureau stating the need for physician's or surgeon's services in excess of fifty dollars," and the Bureau, after investigating the need of the services and giving the employer an opportunity to be heard, shall determine that the services were necessary and that the fees for the same are reasonable. This provision, however, relates only to situations in which "the employer shall furnish to the injured workman" such treatment.
The second paragraph of R.S. 34:15-15 imposes the liability for such services upon the employer when the proofs show the employer has refused or neglected to furnish such treatment and the employee secures the same on his own behalf. McGimpsey v. Serrie, 1 N.J. Super. 282 (App. Div. 1949). The finding of both the Deputy Director and the County Court that appellant, with knowledge of the injury, refused to furnish treatment within the period limited by the statute is fully established by the proofs.
Affirmed, with costs.