MICHAEL NAGY, PETITIONER-APPELLANT, v. FORD MOTOR COMPANY, DEFENDANT-RESPONDENT.

Argued November 6, 1950—Reargued January 2, 1951—Decided February 12, 1951.

Mr. *Abraham L. Friedman* argued the cause for appellant. Mr. *Samuel L. Rothbard,* of counsel. *Messrs. Rothbard, Harris & Oxfeld,* attorneys.

Mr. *Verling C. Enteman* argued the cause for respondent. *Messrs. McCarter, English & Studer,* attorneys.

The opinion of the court was delivered by

HEHER, J. The question here is the meaning of section 9 of Ch. 74 of the Session Laws of 1945 (*Pamph. L., pp.* 378, 390), which amended *R. S.* 34:15–22 to read as follows:

"No agreement between an employee and his employer or insurance carrier for compensation shall operate as a bar to the formal determination of any controversy, unless such agreement has been approved by a deputy commissioner in open court; *provided,* that after a petition has been filed and when the petitioner is represented by an attorney licensed in the State of New Jersey, and when it shall appear to the deputy commissioner that the only issue involved is the extent of disability, the deputy commissioner may, with the consent of the parties, after considering the sworn testimony of the petitioner and such other witnesses present, together with any stipulations of the parties, enter a determination and rule for judgment which shall include a finding of fact as to the amount of the then present disability. Such determination and rule for judgment may be reopened only in accordance with the provisions of section 34:15–27 of this Title."

This is the case history: On January 5, 1945, while in the pursuit of his employment with the Ford Motor Company at its plant in Edgewater, New Jersey, Nagy suffered an injury to his left arm and shoulder; and on July 19 ensuing he filed a petition for compensation under *R. S.* 34:15–7 *et seq.,* alleging that the injury was permanent. On May 27,

1946, following a hearing held on the prior April 8, there was entered in that proceeding what is denominated a "stipulation of facts and order approving settlement," signed by a deputy commissioner of compensation. Nagy was represented by an attorney licensed to practice law in New Jersey. He and his attorney consented to the entry of the order and "the discontinuance of the petition upon the payment of the compensation" therein provided; and the attorneys for the employer gave like consent. The order recites an agreed settlement between the parties, "subject to the court's approval"; also that "under the terms" of the settlement, the employer "does not admit the jurisdictional facts but reserves all of its defenses and makes the settlement solely for the purpose of buying peace." The agreement provided for compensation for a 5% permanent impairment of the use of the left arm, and for payment of counsel fees and the cost of expert medical opinion, in part by each of the parties. It was also set forth that the claimant "was sworn and the terms of the proposed settlement * * * explained to him," and he "expressed an understanding of and satisfaction with the same"; that the medical expert called by the claimant diagnosed his "condition as a sprain of the left shoulder joint, and estimated the permanent disability at $7\frac{1}{2}\%$ to 10% of the left arm"; and that the medical expert summoned by the employer estimated the "loss of the left arm" at 5%. The deputy commissioner "approved" the "proposed settlement" as "fair"; and he ordered that upon payment of the moneys therein provided, "the claim petition be discontinued." On May 29, 1947, Nagy filed a "formal" petition for compensation. The employer answered that at a "formal hearing" held by the Compensation Bureau on April 8, 1946, "it was found," *inter alia,* that the claimant "was suffering from a permanent disability of 5% of the left arm," for which a "formal award" was made and compensation paid accordingly; and that the claimant's "incapacity or permanent disability has not increased since the formal award on April 8, 1946, as evidenced by a Determination of Facts and Rule for Judgment duly signed" by the deputy commissioner on May 27, 1946. On June 25,

1948, following a hearing, there was entered a determination of facts and rule for judgment reciting a finding by the hearing deputy of a 12½% permanent loss of the physical function of the arm, and providing for compensation accordingly, less the amount theretofore paid under the settlement and order of May 27, 1946. It was found that there was "no competent evidence" of an increase of disability subsequent to the approval of the agreed settlement; the award was made for the disability then existing. The hearing deputy regarded the proceeding as an original inquiry not barred by the order approving the settlement, either under the statute or the doctrine of *res judicata*. At this hearing, there were varying opinions expressed by medical experts in respect of the *quantum* of permanent disability of the arm, ranging from 2½% to 25%.

The Bergen County Court, on the employer's appeal, reversed this award of compensation and dismissed the petition as not maintainable because under the Act of 1945 cited *supra*, the agreed settlement between the parties, approved by the Compensation Bureau, constituted a bar to the relitigation of the issue of disability on the merits. The judge conceived that while it was the duty of the hearing deputy "to see that the rights of the employee are protected under such an agreement," the agreement when so approved has "the same effect as any judgment arrived at after a complete litigation of the issues." He was also of the view that such a settlement is subject to modification under *R. S.* 34:15–27, if there be an increase or decrease of disability.

Until the amendment of 1945 cited *supra*, *R. S.* 34:15–22 provided in terms that no agreement between the parties "for a sum other than that which may be determined to be due" by the Bureau, or the Court of Common Pleas on appeal, would suffice to bar the determination "of a controversy upon its merits," or the award "of a different sum" if the Bureau found that the amount agreed upon was "less or more than the injured employee or his dependents" were "properly entitled to receive." Under this and kindred provisions of the statute, such an agreement, even though ap-

proved by the Bureau, did not have the force of a judgment or arbitral award. The judgment of the Bureau was final and conclusive only in the event of a determination of the issues on the merits. A disposition that in essence was a mere agreement of compromise approved by the Bureau was lacking in the element of finality and so did not constitute a bar to a later action to recover the compensation which ought to have been paid under the statute. The policy of the statute would not be served by an irrevocable surrender of a right to compensation as therein fixed, either before or after the occurrence of a compensable accident if the statutory scheme had been accepted by the parties. The Bureau was utterly without jurisdiction to approve a compromise of a valid claim under the act for less than the sum therein prescribed or of a claim outside of the act erroneously asserted to be within its terms. The principle of the law would not be satisfied by reduced payments to one entitled to its benefits or by providing compensation to one not within the statutory class. *P. Bronstein & Co., Inc., v. Hoffman,* 117 *N. J. L.* 500 (*E. & A.* 1937) ; *Streng's Piece Dye Works, Inc., v. Galasso,* 118 *N. J. L.* 257 (*E. & A.* 1937). The employer here contends that the "only possible" interpretation of the amendment is that an agreement for compensation approved by the Bureau "will bar a later determination of the controversy upon the merits." Resort is had to the rule of construction that a change of language in a statute "ordinarily implies a purposeful alteration in substance of the law."

It is fundamental in the statute that the Compensation Bureau has jurisdiction to award compensation only "for personal injuries to, or for the death of," an employee "by accident arising out of and in the course of his employment." *R. S.* 34:15–7. A corollary is that the approval by the Bureau of a compromise agreement made with one not entitled to compensation under the act is nugatory. *P. Bronstein & Co., Inc., v. Hoffman, supra.* In that case the employer denied the existence of the relationship requisite for jurisdiction in the Bureau. Here, the employer denied the "jurisdictional facts," reserved "all of its defenses," and made the settlement

"solely for the purpose of buying peace." This undoubtedly entered into the hearing deputy's conclusion that the settlement approved was "fair"; and that was an alien consideration. A compromise of the compensation allowance proceeding from a denial of liability and jurisdiction is not within the intendment of the legislative grant of power. And, at all events, jurisdiction was not settled.

 The Compensation Bureau is a creature of the statute. Its jurisdiction is special and limited, and where there is reasonable doubt of the existence of a particular power, the power is denied. *P. Bronstein & Co., Inc., v. Hoffman, supra.* Deviations from the Bureau's established sphere of action cannot be given by consent of the parties or be made effective by waiver or estoppel. Where the Bureau transcends its jurisdiction, the action is a nullity. *London Guarantee & Accident Co. v. Sterling,* 233 *Mass.* 485, 124 *N. E.* 286 (1919). Conformance with the policy of the statute is the sole criterion in the exercise of the statutory power of approval of agreements for compensation. The jurisdictional facts must be established, and compensation afforded in full compliance with the statute. The Compensation Bureau does not exercise judicial discretion. This court has held that the Bureau is an administrative agency exercising a delegated legislative power. *Mulhearn v. Federal Shipbuilding and Dry Dock Co.,* 2 *N. J.* 356 (1949). The Legislature may vest a large measure of discretionary authority in the agency charged with the administration of a law enacted in pursuance of the police power, but such grant of power is not on well-settled principles sustainable unless its exercise is controlled by a definitive basic standard and rule of action. *Van Riper v. Traffic Telephone Workers' Federation of N. J.,* 2 *N. J.* 335 (1949); *Abelson's, Inc., v. New Jersey State Board of Optometrists,* 5 *N. J.* 412 (1950); *Jamouneau v. Local Government Board,* 6 *N. J.* 281 (1951); *State ex rel. State Board of Milk Control v. Newark Milk Co.,* 118 *N. J. Eq.* 504 (*E. & A.* 1935).

 Under the amendment of 1945, the ruling principle in the administration of the law is full conformance with its provisions. The act lays down no other standard for adminis-

trative action. Every intendment is to be made in favor of the constitutionality of a statute. The fulfillment of the statutory policy is of concern to the State. The parties themselves are not free to bargain for the surrender of a right of compensation under the statute. They cannot contract out of the statute after the occurrence of a compensable accident; and they are under like disability before the accident except that the statutory scheme of compensation may be rejected in favor of the common-law remedies for negligence. The requirement of approval by the Bureau is obviously to insure the application of the rule of the statute. The compensation act provides social insurance in the common interest as well as the interest of the injured workman. Indemnity for the risks of service, even without fault, is made to fall upon industry as an incident of the operation and eventually upon the consumer. *Bendler v. Bendler*, 3 *N. J.* 161 (1949).

The exercise of the approving authority necessarily takes the form of a determination and rule for judgment establishing the jurisdictional facts and awarding the compensation ordained by the statute, just as in the case of the litigation of a controversy as to disability alone under the express terms of the proviso. The sound interpretation and meaning of the statute, on a view of the enacting clause and the proviso, taken and compared together in the light of related provisions, is to prevail. The purpose of construction is to bring the operation of the statute within the apparent intention of the Legislature. *New Jersey State Board of Optometrists v. S. S. Kresge Co.*, 113 *N. J. L.* 287 (*Sup. Ct.* 1934); affirmed, 115 *N. J. L.* 495 (*E. & A.* 1935). Viewing the statute in its entirety, there is no good reason to suppose that the Legislature designed to put the determination based upon the agreement of the parties on all issues beyond the reach of the remedy provided by *R. S.* 34:15–27, and to make it applicable where the *quantum* of disability is alone the subject of disagreement. The apparent purpose was to formalize the procedure, for the effectuation of the statutory principle, where the parties are not in controversy as to the subject matter.

It results that the Bureau's approval of the agreed settlement was in excess of its jurisdiction, and therefore did not constitute a bar to the later formal determination of the controversy by the Bureau, now before us for review.

And we are of the view that the Bureau's finding as to the *quantum* of disability is well grounded in the proofs.

The judgment of the County Court is accordingly reversed, and the determination of the Bureau is affirmed.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, BURLING and ACKERSON—6.

*For affirmance*—Justice WACHENFELD—1.