12 N.J. Super. 231 (1951)
79 A.2d 473
DOMINICK FERRARO, PLAINTIFF-RESPONDENT,
v.
GOTTHARD ZURCHER, SR., AND UNITED STATES CASUALTY CO., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued February 5, 1951.
Decided February 20, 1951.
*233 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
*234 Mr. Harry Krieger argued the cause for plaintiff-respondent.
Mr. James J. Skeffington argued the cause for defendants-appellants.
The opinion of the court was delivered by WILLIAM J. BRENNAN, JR., J.A.D.
Appellant insurance company filed with the Division (then styled Bureau) of Workmen's Compensation a duly executed Form 3 (R.S. 34:15-98) dated December 21, 1945, undertaking to pay petitioner workmen's compensation for permanent total disability. The bureau approved the agreement by an executed Form 5(a) dated February 13, 1946 (R.S. 34:15-50). Payments were made under the agreement until October 13, 1946, when they were stopped. Petitioner filed his claim petition on May 26, 1948. The deputy director after hearing found that petitioner's disability did not exceed 20 to 25 per cent permanent partial disability and dismissed the petition by determination entered May 31, 1949, because the payments which had been made under the agreement exceeded the compensation payable for such disability. The Passaic County Court on appeal found that petitioner had suffered permanent total disability and on August 23, 1950, entered judgment accordingly. Defendants appeal.
Petitioner argues that the approval of the agreement set forth in Form 5(a) issued by the bureau has the force of a judgment binding upon appellants, subject to modification only if the appellants have proved a diminution of disability in accordance with R.S. 34:15-27. Not so. An approval pursuant to R.S. 34:15-50, which is what the approval was, is not a determination upon the merits and thus is not a finality to be reopened only to the extent permitted by R.S. 34:15-27. Form 5(a) itself provides: "If payments are not made as set forth (or if, for any reason, there should be a modification of this settlement) this Bureau should be notified at once." The Division of Workmen's Compensation was powerless to view that approval as final. Nagy v. Ford Motor *235 Co., 6 N.J. 341 (1951); Donofrio v. Haag Bros., Inc., 10 N.J. Super. 258 (App. Div. 1950). Before there exists an adjudication of the extent of disability which may be modified only under R.S. 34:15-27 (that is, when, as here, the only issue involved is the extent of disability), there must be a determination and rule for judgment which includes a finding of fact as to the amount of the then present disability and which is entered after hearing in open court upon consideration of the sworn testimony of petitioner and other witnesses present, together with any "stipulations of the parties," and which otherwise satisfies the requirement of the proviso to R.S. 34:15-22, as amended by L. 1945, c. 74, p. 390, effective April 2, 1945.
No agreement between an employee and employer or insurance carrier for compensation not approved by a hearing deputy in open court operates as a bar to the formal determination of any controversy. R.S. 34:15-22; Nagy v. Ford Motor Co., supra. When payments under the agreement stopped, petitioner availed himself of the remedy provided by R.S. 34:15-51, that is, he filed his petition within two years after the last payment for an original and formal adjudication of his claim upon the merits. The burden of proof upon that petition was not upon appellants to prove a decrease of disability but upon petitioner to sustain by preponderant evidence the claim asserted therein that his permanent disability was total.
At best the agreement was some evidence against appellants as a declaration against interest. Miller v. National Chair Co., 127 N.J.L. 414, 423 (Sup. Ct. 1941); affirmed, 129 N.J.L. 98 (E. & A. 1942). It spoke, however, as of December 21, 1945, and upon this record was not of itself sufficient proof to sustain the allegation of permanent total disability made in the petition filed May 26, 1948. Cf. Burns v. Thomas A. Edison, 92 N.J.L. 288 (Sup. Ct. 1919); Dubies v. Manufacturers Liability Insurance Co., 96 N.J.L. 107 (Sup. Ct. 1921); affirmed, 97 N.J.L. 567 (E. & A. 1922); Craciola v. Lewis, 253 N.Y.S. 752 (App. Div. 1921); Lanni v. Amsterdam Building Co., 217 App. Div. 278, 216 N.Y.S. *236 763 (1926); Anthus v. Rail Joint Co., 185 N.Y.S. 314 (App. Div. 1920); affirmed, 231 N.Y. 557, 132 N.E. 887 (1921); O'Boyle v. Harry Seitz & Sons, 160 A. 145 (Super. Ct. Pa. 1932).
The question for our decision is what percentage of permanent disability was proved. In our approach to the problem determinative weight in the first instance is given to the factual findings of the County Court. Donofrio v. Haag Bros., Inc., supra; McGowan v. Peter Doelger Brewing Co., 10 N.J. Super. 276 (App. Div. 1950). We are empowered, however, in our discretion, to make independent findings of fact when the interests of justice require it, and our review of this voluminous record persuades us that we should do so in this case. Rule 3:81-13 (cf. Rules 1:2-20 and 4:2-6).
Petitioner was 67 years of age when on August 25, 1943, he suffered a serious brain injury by falling from a garbage truck on which he was working for the defendant Zurcher. He suffered a subarachnoid hemorrhage, although there was no skull fracture. He was hospitalized for seven weeks. Three weeks after the accident the insurance company retained Dr. Bohl to attend him; Dr. Bohl treated him thereafter and for a considerable period after his discharge from the hospital on October 13, 1943. The doctor's opinion in 1945 was that petitioner was totally disabled and upon that opinion the insurance company prepared and filed the Form 3 agreement of December 21, 1945. Dr. Bohl re-examined petitioner on October 12, 1946, and concluded he had made "a remarkable recovery" and that his then present overall permanent partial disability did not exceed 20 to 25%. The insurance company discontinued payments under the agreement the following day, October 13, 1946.
The petitioner had performed arduous manual labor all his life. His testimony at the hearing and his complaints to his own medical witness, Dr. Policastro, when that doctor examined him on June 1, 1948, and to Dr. Blumberg, appellants' medical witness, who examined him on January 3, 1949, were of alleged virtual loss of memory, persistent pains through the back and head, dizziness, constant fatigue and, as a result, *237 complete incapacity to do any kind of sustained laboring work; that when he tried to work, which he said was usually only around his garden, and once when he tried to help in the building of his church, and again when he tried to take a job with the Borough of West Paterson, his weakness and dizziness and the pains in his back forced him to stop. Both Doctors Policastro and Blumberg accepted these complaints as residual consequences of his injury, and based thereon, Dr. Blumberg, appellants' witness, like Dr. Bohl, the treating physician, originally held the opinion that petitioner was totally disabled.
The appellants' proofs showed that petitioner had exaggerated his condition and symptoms in a very substantial degree. His responses on cross-examination to questions concerning past events exploded his claim of loss of memory. He had been under surveillance by the insurance company since July 11, 1946, when the carrier was told by defendant Zurcher that he had seen petitioner digging a trench with pick and shovel. The carrier's then claim manager took motion pictures and still photographs of him on five days in July, 1946, showing him digging the trench and using a pick and shovel, shoveling dirt from the road into a truck and lifting and carrying heavy hose. It was in the following October that Dr. Bohl re-examined him and that payments under the agreement were discontinued. After the petition was filed on May 26, 1948, more motion pictures and still photographs were taken at intervals on nine days in the subsequent months of August, September and October. They showed petitioner digging another trench, hoeing weeds and cleaning up fill at an excavation. In March, 1949, while the hearings were in progress, still more motion pictures and photographs were taken showing him working in his garden with pick and shovel and doing labor work at a development of the Garrett Park Land Company. There was also evidence that the Borough of West Paterson had paid him $768.13 for laboring work over the three-year period from the fall of 1945 to the fall of 1948, and that Garrett Park Land Company paid him $509.92 for work as a handyman performed from time to time during the year 1948.
The County Court was not justified on this record in accepting *238 petitioner's testimony as true and in reaching its conclusion in unqualified reliance upon the opinion of his doctors, particularly that of Dr. Policastro, who had based his judgment largely upon his belief in the truth of the symptoms related to him by petitioner. Dr. Policastro testified on January 6, 1949, and did not see the pictures, which were put in evidence on March 31, 1949, without, we may suppose, prior knowledge by petitioner or his attorney of their existence. It is a reasonable inference that Dr. Policastro's opinion would have been influenced by the activities of petitioner indicated by the pictures in light of their substantial impeachment of petitioner's recital of symptoms and the impression he made when the doctor examined him, "passive," "dazed and emotionless attitude," "uncertain gait," "he walked with a wide step, like a drunkard," upon which the doctor's opinion was so largely premised. Too, it must count against petitioner that he did not take the stand in rebuttal to attempt to reconcile his testimony and the symptoms he had related to the doctors with the damaging evidence shown by the pictures.
We are not persuaded, on the other hand, by appellants' argument that the evidence of the motion pictures, fortified by Dr. Blumberg's opinion, is to be deemed decisive against a finding of any permanent disability in excess of 20 to 25%. Dr. Blumberg said that, "* * * having seen those movies and those stills, by no stretch of the imagination could the conclusion be possibly drawn that this patient is totally disabled. And the only conclusion I can make is that I unfortunately was misled in my original opinion. And I do not believe, giving the patient credit for all my findings, that his disability would exceed 20% of total at the outset." He said he had now concluded after looking at the pictures that petitioner's complaints to him of noises in the head, pain in the back of neck, pain throughout entire back, impaired vision and poor memory were not to be believed and that his gait at the time of the examination on January 3, 1949, and his unsteadiness were simulated and that "he does not usually walk in that manner described," that his opinion "following the time of my examination is qualified on what has been *239 demonstrated to me in the movies and in the stills, that on that basis the man has a disability which does not exceed 20% of total from any cause." The deputy director also accepted the motion pictures as having the effect ascribed to them by Dr. Blumberg and this led him to reject all of petitioner's medical testimony, both that of Dr. Policastro and that of Dr. Rubacky (we will discuss the latter's opinion at more length) and "to accept the opinion of Dr. Blumberg as the more accurate opinion on that subject."
Petitioner's own testimony unquestionably stands as substantially impeached and, to the extent his medical witnesses based their opinions on his exaggerated subjective symptoms, those opinions, of course, cannot be unqualifiedly accepted. The Compensation Act, however, "provides social insurance in the common interest as well as the interest of the workman," Nagy v. Ford Motor Co., supra, and does not sanction punishment of exaggeration or indeed misrepresentation by denial of proper compensation for a disability otherwise sustained by the proofs.
That petitioner suffered a severe and usually disabling brain injury is amply proved. Dr. Bohl said that when he first saw petitioner in 1943, "I felt he was greatly disabled and that he apparently had a kind of bad injury. Considering the age of the man, he was thrown out of a truck, and having had a concussion and had an epidural hemorrhage, these are serious injuries, and you must conclude, that if they are so, the man was not in good shape." The deputy director was satisfied that petitioner had suffered "a most unusual injury" and "brain damage" but, because of what he saw in the motion pictures, was persuaded that "By some miraculous recuperative power that this petitioner was able to muster or to put in motion, he has now recovered sufficiently that he is able to do the work that a man of his age without any injury would have a struggle or at least an effort to perform." The seriousness of the injury was not feigned, and because they recognized its seriousness all of the doctors could and did readily accept petitioner's recitals of its results as logically to be expected to flow from *240 such an injury. Petitioner seemingly has not had a continuing complete incapacity but he is, nonetheless, permanently disabled to a substantial extent.
Our impression is that Doctors Bohl and Blumberg were overpersuaded by the motion pictures to reject petitioner's claimed symptoms not merely as overstated but as completely non-existent and to discount their original opinions more than the facts warrant. And the deputy director's exclusive reliance upon the pictures seems to have caused him to overlook or too lightly to consider other substantive proofs in petitioner's case which, while not sustaining a claim of total permanent disability, supports certainly, with the proofs of a serious injury, a substantially higher partial disability than 20 to 25%.
The pictures include scenes taken of petitioner's activities in March, 1949, while the hearings were being held and when petitioner was employed by Garrett Park Land Company, as he had also been on occasions during 1948. The president of that company was a witness for appellants. His testimony portrays petitioner's capacity in a very different light than the impression of it gained in watching the motion pictures. When looking at the activities of petitioner depicted by the films the impression is of an individual with an almost complete absence of physical impairment. The company's president, however, testified that petitioner could not work every day but only on days "if he feels fit." The witness rode petitioner to and from the job and said that on many days "he was unable to go to work"; he said further that he did not ask petitioner to do heavy work and that on occasions "I would see by his condition that he should go home and I would pick him up and take him home." "He would be fagged out, played out." This witness' testimony on appellants' behalf can not be discounted for bias or interest and is entitled to substantial weight.
There was also other evidence of a similar nature. James Braio testified that in 1947 while building his own home he hired petitioner from time to time to help dig a ditch, "But it was not heavy work," "This man worked slowly. At intervals *241 he would rest. He did some work, and at the end he would feel tired."
The Superintendent of Public Works of the Borough of West Paterson testified he found petitioner to be unsatisfactory, "He couldn't match the other men as good as they were working." "Well, if he worked two minutes he would rest one minute of it," "I tried him several times digging but he seemed to get in his own way, so I had him do other work." The superintendent discussed petitioner's unsatisfactory performance with superiors at the borough hall but kept him on nevertheless.
The pastor of petitioner's church testified that before the accident petitioner "was a very happy disposition man, and since the accident I find him all depressed and very troubled with himself, downhearted and afflicted"; that petitioner volunteered in November, 1946, to help in the building of the church, "But after I saw how he would act I was afraid to let him work and I told him not to work."
Finally Dr. Rubacky, an orthopedist, who examined petitioner on June 7, 1948, testified that he gave petitioner several objective tests upon the results of which his opinion that petitioner was totally incapacitated was largely based. He made no mention in his evidence of having had from petitioner a history of headaches, backaches, loss of memory or other subjective complaints such as were given by petitioner to Drs. Policastro and Blumberg, and his opinion is, therefore, not subject in the same degree to the infirmity of a discredited basis. In addition, petitioner did tell this doctor that he had attempted some work; "that at the suggestion of the adjuster of the insurance company he took a job with the Borough of West Paterson because he was told the exercise would make him feel better," "that he worked intermittently a few days for about two weeks and then had to quit because of pain resulting in weakness." This was not quite the full story, but it is not wholly inconsistent with the testimony we have reviewed. The doctor said his examination satisfied him "petitioner presents a typical history of postconcussion syndrome," that "the paraspinals were both tense and spastic, and *242 he had a series of myostic nodules scattered throughout both lumbar and both gluteal groups," "Indicative of muscular pathology due to irritation of fibers." "It is possible to be due to some other causes, but it is probably due to trauma." "Whatever he had prior to this, if it was not disabling, was aggravated by the injury," that while admitting that disability resulting from advancing years "is usually gradual but it may be hastened and accelerated by trauma. That is what I think happened in this instance."
In the face of these proofs the motion pictures cannot be accorded decisive evidentiary weight. This conclusion is strengthened by the consideration that the film is a single reel put together by splicing the ends of three 100-foot rolls and one 75-foot roll. The reel requires approximately 15 minutes to project. The impression upon the viewer is of continuous activity on the part of petitioner, although, in fact, the film depicts separate incidents which occurred on 15 different days over a period of almost three years, some in 1946 and others in 1948 and 1949. This presentation of isolated incidents occurring at widely separated times gives the deceptive impression of a continuing performance and tends to cause the viewer to infer that petitioner has a capacity for sustained effort, which clearly is not the fact.
On the whole case, our study of the record brings us to the conclusion that, while petitioner did not prove he sustained a permanent total disability as found by the County Court, his permanent total disability substantially exceeded the 20 to 25% determined by the deputy director. Our independent finding, after our review, is that the impairment suffered was a permanent partial disability of 70%.
The judgment of the County Court is modified to assess petitioner's permanent disability at permanent partial disability of 70%, and, except as so modified, the judgment is affirmed.
No costs to either party.