58 N.J. Super. 166 (1959)
155 A.2d 796
ARTHUR BISONIC, PETITIONER-RESPONDENT,
v.
HALSEY PACKARD, INC., RESPONDENT-APPELLANT.
Superior Court of New Jersey, Essex County Court, Law Division.
Decided November 19, 1959.
*168 Mr. George Vaccaro argued the cause for the respondent-appellant (Mr. Walter H. Jones, attorney).
Mr. Herman M. Wilson argued the cause for the petitioner-respondent.
CONKLIN, J.C.C.
The petitioner, Arthur Bisonic, while in the employ of the respondent, Halsey Packard, Inc., suffered an inguinal hernia on September 9, 1956. The injury was incurred while petitioner was acting in his capacity as an automobile salesman when he attempted to push an automobile away from a wall so that he could show it to a potential customer.
Petitioner made application for an informal hearing before the Workmen's Compensation Division and was offered the *169 opportunity to submit to surgical repair of the hernia or to accept compensation to the extent of 5% of total, or 27 1/2 weeks at $30 a week, in lieu of surgery. On January 10, 1957 petitioner accepted the tendered compensation rather than the surgical repair, his decision apparently influenced by a prior history of serious surgical procedures on his eyes, gall bladder, and another hernia, and also the failure of respondent to authorize petitioner's family physician, Dr. Charles H. Evans, to perform the surgery.
After the informal hearing, petitioner suffered increasing physical discomfort as the result of the hernia, and on the advice of Dr. Evans, petitioner was admitted to Orange Memorial Hospital on February 13, 1957, and an operation was there performed on February 15 by Dr. Evans for the repair of the hernia. During the course of the operation, which lasted approximately three hours, Dr. Evans repaired several other hernias, including a large incisional hernia which had resulted from the gall bladder operation six or eight years previously. The facts up to this point are undisputed. The respondent concedes that petitioner suffered an inguinal hernia arising out of and in the course of his employment.
Petitioner now by way of a formal hearing before the Workmen's Compensation Division seeks a formal award of compensation for this injury and the corrective operation and hospitalization. Petitioner claims that he suffered a ventricular failure as the result of the operation which is causally and proximately related to the accident of September 9, 1956, for which he is further entitled to compensation.
Respondent, on the other hand, contends that the present disability, if any, is not causally related to the accident; that the length of the operation was not proximately caused from conditions flowing from the accident; that the petitioner has failed to prove by a preponderance of the credible testimony that he suffered a "heart failure" by reason of the operation; that he had an "asymptomatic" heart condition at the time of the accident in September; and that *170 his actions so prejudiced the rights of the respondent as to warrant a denial of any award for permanent disability as to other conditions.
At the formal hearing below, the Deputy Director found that petitioner's present disability was causally related to the accident of September 9, 1956, and awarded compensation in the amount of 25% of total, plus the cost of the corrective surgery and subsequent treatment for the heart condition. Against this amount a credit was allowed for the payments made pursuant to the compromise agreement.
An orderly presentation and disposition of the issues presented in this case would seem to require that the court consider initially the last of respondent's defenses set out above; namely, that petitioner by his actions so prejudiced the rights of the respondent as to warrant a denial of any award, even if a disability, otherwise compensable, was found to exist. With respect to this contention, the effect of the informal award approved by the Division on any subsequent formal hearing must be determined, along with refusal of petitioner to submit to surgery by anyone other than Dr. Evans, his own family physician.
Petitioner's brief and the Deputy Director's findings indicate that the effect of the award made at the informal hearing on any future formal hearing was disputed at the hearing below. Respondent claimed that the informal agreement operated as a bar to recovery in the present proceeding. The Deputy Director concluded, however, that "the petitioner in the instant case is not barred from a formal determination of his legal rights pursuant to the provisions of R.S. 34:15-7, et seq."; and, in any event, "the petitioner is not precluded from a review of any award on the ground that his incapacity has subsequently increased. N.J.S.A. 34:15-27."
On appeal, respondent again presents this same contention, indicating that he is not in agreement with the Deputy Director on this matter; therefore, it will be briefly considered by the court.
*171 N.J.S.A. 34:15-22 provides in part:
"No agreement between an employee and his employer or insurance carrier for compensation shall operate as a bar to the formal determination of any controversy, unless such agreement has been approved by the commissioner, the director, a deputy director, or a referee designated as a `referee, formal hearings,' in open court; * * *."
Following the semicolon are two provisions which define situations in which an agreement can be approved so as to prevent a further formal determination, unless there is a change in disability under N.J.S.A. 34:15-27. Both provisos require the filing of a petition, representation by an attorney, extent of liability as the sole issue involved, and sworn testimony of the petitioner and other witnesses.
No claim is made that the informal hearing which resulted in the agreement in the instant case was such that it fitted either of the two above-mentioned provisos. Therefore, the reproduced portion of the statute indicates that there should be no bar to a formal hearing on an original petition here presented.
Ferraro v. Zurcher, 12 N.J. Super. 231 (App. Div. 1951), cited by the Deputy Director below, is an example of the operative effect of the statute. In that case an employer's insurance company undertook to pay workmen's compensation for permanent total disability to an employee, and a voluntary agreement was executed and approved by the Division pursuant to R.S. 34:15-50. The employee subsequently filed a formal petition for compensation when payments under the prior agreement were stopped. At a formal hearing the petitioner's disability was found not to exceed 20 to 35% permanent partial disability, and the petition was dismissed because the payments already received by petitioner exceeded the compensation payable for such disability. On appeal the Passaic County Court found petitioner had suffered permanent total disability.
The employer appealed to the Appellate Division of the Superior Court and the petitioner urged that the approval *172 of the agreement by the Division had the force of a binding judgment upon the employer, subject to modification only if the employer proved a diminution of disability in accordance with N.J.S.A. 34:15-27. To this contention the court in its opinion replied as follows:
"Not so. An approval pursuant to R.S. 34:15-50, which is what the approval was, is not a determination upon the merits and thus is not a finality to be reopened only to the extent permitted by R.S. 34:15-27. * * * The Division of Workmen's Compensation was powerless to view that approval as final. Nagy v. Ford Motor Co., 6 N.J. 341 (1951); Donofrio v. Haag Bros. Inc., 10 N.J. Super. 258 (App. Div. 1950). Before there exists an adjudication of the extent or disability which may be modified only under R.S. 34:15-27 (that is, when, as here, the only issue involved is the extent of disability), there must be a determination and rule for judgment which includes a finding of fact as to the amount of the then present disability and which is entered after hearing in open court upon consideration of the sworn testimony of petitioner and other witnesses present together with any `stipulations of the parties' and which otherwise satisfied the requirement of the proviso to R.S. 34:15-22 as amended by L. 1945, c. 74, p. 390, effective April 2, 1945."
The record on appeal in the present case does not reveal whether the informal agreement approved by a referee of the Workmen's Compensation Division was one intended to be covered by R.S. 34:15-50 or not; but regardless of its nature, the reasoning of the Ferraro case is none the less applicable. An agreement for compensation which is not approved in open court does not operate as a bar to the formal determination of any controversy. See also Simon v. R.H.H. Steel Laundry, Inc., 25 N.J. Super. 50 (Cty. Ct. 1953); Stroebel v. Jefferson Trucking and Rigging Co., 125 N.J.L. 484 (E. & A. 1940). Consequently, the fact that petitioner entered into an informal compromise agreement whereby he accepted compensation for his injury in lieu of surgery does not prevent him from seeking a formal adjudication of his right to compensation for such injury and its sequelae. Of course, respondent is entitled to have the payments which he made on the basis of the agreement *173 credited against any award made as a result of the formal determination of petitioner's rights.
Had this case arisen prior to the 1950 amendment of R.S. 34:15-12(x), now N.J.S.A. 34:15-12, the decision in this case might have been somewhat different. See Bush v. Rudolph, 14 N.J. Misc. 869 (W.C.B. 1936).
Turning now to the other factor which respondent believes so prejudiced him as to require a denial of any compensation, namely, the refusal of petitioner to submit to surgery by a physician approved by the respondent, R.S. 34:15-23, is relevant. That statute provides:
"Whenever it shall appear that an employer is being prejudiced by virtue of the refusal of an injured employee to accept proffered medical and surgical treatment deemed necessary by the physician selected by the employer, or his failure or neglect to comply with the instructions of the physician in charge of the case, the employer is hereby authorized to file a petition with the workmen's compensation bureau, which is hereby empowered to order proper medical and surgical treatment at the expense of the employer. In the event of refusal or neglect by the employee to comply with this order the bureau shall make such modification in the award contained in the schedule as the evidence produced shall justify."
Petitioner's acceptance of the compromise compensation and refusal to undergo corrective surgery by a doctor authorized by respondent appears to have been motivated by two factors. First, petitioner was apprehensive as to the effect that the operation might have on him, since in the past he had many major surgical experiences; and second, Dr. Evans, in whom petitioner's confidence was exclusively reposed, was not authorized by respondent to perform the operation.
Petitioner's testimony indicates that the first stated factor was controlling. In any event, respondent failed to pursue its statutory remedy in cases where proffered medical and surgical treatment is refused. As set forth above, the statute requires that the respondent itself initiate a petition before the Workmen's Compensation Division in order to prevent prejudicial harm from resulting. Since the respondent did *174 not comply with this statute, it cannot now raise this defense. Robinson v. Jackson, 116 N.J.L. 476 (E. & A. 1936). The fact that respondent was relying on the compromise agreement which was accepted "in lieu of surgery" does not alter the situation. As previously discussed, the informal hearing and agreement in no way effects a formal adjudication of petitioner's rights to compensation for the injury and its sequelae. Respondent, in essence, was not prejudiced thereby.
The fact that petitioner is now claiming compensation for treatment rendered by an unauthorized physician is also without effect. Respondent cannot deny that surgery was required to repair the hernia sustained by petitioner, as it was the tender of just such treatment which was refused. Accordingly, respondent's interest was not prejudiced by the performance of the corrective surgery. Napoleon v. Jersey City Coal & Ice Co., 14 N.J. Misc. 54 (W.C.B. 1935). No proof has been offered to show that if the operation had been performed by an authorized physician that respondent would have been put in any more of an advantageous position. That indeed would involve mere speculation, since no suggestion was made that any authorized physician was more competent to perform the surgery than Dr. Evans.
Petitioner testified that the reason he went ahead with the operation was that the pain became so severe he could no longer suffer it, and that Dr. Evans advised the operation in order to avoid further complications. It is therefore possible to also view the instant situation as one encompassed by that portion of R.S. 34:15-15 which authorizes compensation as to physicians' treatment, hospital services and similar expenses, undergone by an employee when "the circumstances are so peculiar as shall justify, in the opinion of the workmen's compensation bureau, the expenditure assumed by the employee for such physicians' treatment and hospital services, apparatus and appliances." See Bobertz v. Hillside, 126 N.J.L. 416 (E. & A. 1941); Colbert v. Consolidated Laundry, 31 N.J. Super. 588, 590 (App. Div. 1954).
*175 The major issues in this case, and the ones at which most of respondent's arguments are directed, are as follows: First, whether the operation of February 15, 1957 was sufficiently related to petitioner's accident of September 9, 1956, so as to make it compensable, along with its sequelae; and second, whether petitioner's present cardiac disability in the nature of a ventricular failure is causally related to the operation of February 15, 1957.
It has often been stated that the employer is chargeable with the direct consequences of an accident and not with those only remotely flowing therefrom. Or, to put it another way, the inquiry is whether the injury is reasonably attributable to a proximate cause set in motion by the accident rather than by some other agency. McDonough v. Sears, Roebuck & Co., 127 N.J.L. 158, 160 (Sup. Ct. 1941); affirmed 130 N.J.L. 530 (E. & A. 1943). Selak v. Murray Rubber Co., 8 N.J. Misc. 838 (Sup. Ct. 1930); affirmed 108 N.J.L. 548 (E. & A. 1932).
With respect to the instant case, as noted previously, the petitioner testified that he was moved to undergo the operation because of the physical distress accompanying his accidental hernia. It is true that when the inguinal hernia was repaired, extensive repairs were made to other parts of the abdominal wall which had no apparent causal connection with the inguinal hernia. It is also a fact that the additional repair of abdominal wall prolonged what would normally have been a half to three-quarters of an hour operation into one which lasted three hours. Nevertheless, were it not for the accident of September 9, 1956, petitioner would not have been subjected to any surgical procedure whatsoever. The court is satisfied that the operation was reasonably attributable to the inguinal hernia which was admittedly caused by petitioner's attempt to push the automobile.
With this conclusion a proper causal relationship between the accident and the operation is established, so that if the cardiac disability can be said to be causally related to the *176 hernia operation, then it too will be compensable. Rugg v. Driwood Corp., 126 N.J.L. 566 (Sup. Ct. 1941); Dunn v. Atlantic City, 120 N.J.L. 141 (Sup. Ct. 1938); affirmed 121 N.J.L. 588 (E. & A. 1939).
That petitioner is now suffering from a cardiac condition is not doubted. Dr. Jack S. York, one of petitioner's own medical experts, found that such a condition existed on September 10, 1957. What are the indications, then, that this present disability is causally related to the corrective surgery performed on February 15, 1957?
Immediately following the operation petitioner's blood pressure was found to have dropped abnormally. The day following the operation petitioner was found to be suffering from rales at the base of the right lung. Petitioner testified that he suffered from a shortness of breath and chest pains during his post-operative stay in the hospital. After a period of convalescence at home petitioner was unable to resume full-time employment due to a continued shortness of breath and lack of strength. Upon recommendation of Dr. Romano petitioner came under the care of and was examined by Dr. Lieb, a cardiologist, on March 13, 1957. At this time a diagnosis of "arteriosclerotic heart disease with enlargement of the left ventricle and left ventricular failure" was made.
In July of 1957 petitioner "passed out" while attempting to climb some stairs at his place of employment and was hospitalized at Columbus Hospital where he was examined by Dr. Michael C. Ritota, the attending cardiologist. A final diagnosis of arteriosclerotic heart disease with coronary insufficiency was made.
Petitioner was again hospitalized a year later at the Clara Maas Hospital under the care of Dr. Saul Lieb, due to a return of his symptoms of coronary insufficiency and complications of bronchitis and arthritis. At the present time petitioner complains of shortness of breath and exhaustion.
The question of causal relationship between the present cardiac disability and the corrective surgery performed on *177 February 15, 1957 must of necessity be decided on the basis of medical testimony.
Dr. Lieb and Dr. Ritota, both eminent cardiologists, testified on behalf of petitioner that a definite causal relationship existed. Dr. York, who examined petitioner on September 10, 1957, testified for respondent that heart failure did not occur during petitioner's hospitalization for the operation. He does admit that the drop in the blood pressure and the presence of rales could be an indication of heart failure.
Dr. Evans, appearing by subpoena, also testified that during petitioner's hospitalization he did not detect any evidence of heart failure. However, Dr. Evans admittedly is not a cardiologist, and he said that he sent petitioner home from the hospital sooner than he should have.
The testimony of these four witnesses is quite lengthy. For practical considerations, a detailed review of that testimony is therefore omitted. The court, however, as is its duty has carefully considered with a new mind all the exhibits and testimony presented and concluded that there is a causal relationship between petitioner's present cardiac disability and the surgery performed on February 15, 1957.
It is to be noted that petitioner does not have to prove to a certainty that such a causal relationship exists. The standard is probability rather than certainty. The test is whether the evidence is of a quality sufficient to generate belief that the tendered hypothesis is in all human likelihood the fact. Ciuba v. Irvington Varnish & Insulator Co., 27 N.J. 127 (1958); Mergel v. New Jersey Conveyors Corp., 14 N.J. 609 (1954).
In the court's opinion, petitioner has met this test and sustained his burden of proof. In reaching this conclusion the court has given due regard, but not controlling weight, to the Deputy Director's findings below and his opportunity to evaluate the credibility of witnesses. Donofrio v. Haag Brothers, Inc., 10 N.J. Super. 258 (App. Div. 1950).
*178 The finding of a causal relationship between the operation and the present cardiac disability culminates the chain of causation initiated by the original accident of September 9, 1956, making the present disability compensable. And, as heretofore discussed, respondent's other arguments opposing compensability have been found to be without merit.
With respect to the compensation awarded by the Deputy Director, the court finds it to be fair and reasonable in all respects.
Judgment for the petitioner.