No. 93-259

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

ELOISE SIMONS,

Claimant, Respondent and
Cross-Appellant,

STATE COMPENSATION MUTUAL
INSURANCE FUND and RESERVE STREET
PET & FOOD SUPPLY,

Defendant, Appellant and
Cross-Respondent.



APPEAL FROM:    State of Montana
                Workers' Compensation Court
                The Honorable Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Kristi Blazer, Assistant Attorney General Agency
            Legal Services Bureau, Helena, Montana

        For Respondent:

            Morgan M. Modine, Modine & Thompson, Missoula,
            Montana

                        Submitted on Briefs:   October 21, 1993

                                Decided:   December 16, 1993

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

The State Compensation Mutual Insurance Fund (State Fund) appeals the decision of the Workers' Compensation Court which found in favor of claimant. Claimant cross-appeals the denial of attorney fees, costs and a 20% penalty. We affirm.

The issues presented for our review are:

1. Did the Workers' Compensation Court err in excluding a previously undisclosed surveillance tape from evidence at trial?

2. Did the Workers' Compensation Court err in giving greater weight to the testimony of the treating physician than to the testimony of the State Fund's expert?

3. Did the Workers' Compensation Court err in denying attorney fees, costs and a 20% penalty?

At the time of the injury involved in this appeal, Eloise B. Simons (Simons) worked as a dog groomer for Reserve Street Pet and Food Supply/A-l Grooming in Missoula, Montana. She had been a dog groomer for approximately twenty years, at times self-employed and at times working for others.

On June 20, 1991, Simons was grooming a standard poodle which weighed over fifty pounds. As she carried the poodle from the grooming table to the bathing tub, her left arm gave way and she dropped the dog to the floor. Simons finished grooming the dog with another worker's assistance and then sought medical attention for an injury to her left arm and left shoulder.

Two separate claims arose from that accident. Simons was treated for carpal tunnel syndrome and she received benefits under

the Occupational Disease Act relative to that injury. She also was treated for an injury to her left shoulder area which involved the rhomboid and trapezius musculature. The shoulder injury is the subject of this appeal.

On the day of injury, Simons sought treatment from Dr. Woltanski at the Western Montana Clinic Now Care facility. On June 25, 1991, Simons saw Dr. Moseley, an orthopedic surgeon. Dr. RUSSO, a neurologist, also examined Simons on that day and confirmed Dr. Moseley's diagnoses. Dr. Moseley became Simons' treating physician for both injuries. Dr. Moseley diagnosed bilateral carpal tunnel syndrome and a strain of the left rhomboid muscle group sustained by lifting the dog. He recommended surgical treatment for the carpal tunnel syndrome and physical therapy for the rhomboid strain. Dr. Moseley later testified that his diagnosis and the injury were compatible with the description of the accident supplied to him by Simons.

Dr. Moseley performed carpal tunnel surgery on both wrists. Simons' claim for the injury to her wrists was settled prior to trial under the Occupational Disease Act. The State Fund accepted liability for Simons' shoulder injury under the Workers' Compensation Act.

On August 30, 1991, after recovery from the carpal tunnel surgeries, Dr. Moseley noted that Simons was asymptomatic in both hands and the neck and released her to return to work without restrictions. Simons returned to work at Reserve Street Pet and Food Supply/A-1 Grooming for a period of about five weeks, resuming a normal workload and work activities.

3

On October 2, 1991, after working in her previous occupation for four or five weeks, Simons saw Dr. Moseley for pain in her wrists. On January 17, 1992, Simons again saw Dr. Moseley, this time complaining of intermittent pain in the left trapezius and upper rhomboid muscles. Dr. Moseley concluded that Simons suffered from a mild chronic strain syndrome in the upper left trapezius and that the injury should not preclude her from working in an occupation that would not involve vigorous overhead lifting. He further concluded that her condition was medically stationary and was unlikely to improve. Dr. Moseley assessed a 3% whole person impairment, attributing 1% to the left shoulder and 1% to each wrist. Dr. Moseley also restricted Simons from doing work which involved vigorous overhead lifting.

After that determination by Dr. Moseley, Simons asked for and received successive work restrictions. On April 21, 1992, Dr. Moseley restricted Simons to lifting no more than 15 pounds overhead and no more than 30 pounds to chest level and restricted Simons from working overhead and at shoulder level. The State Fund then retained a vocational rehabilitation consultant to perform an employability assessment. Relying primarily on information supplied by the time-of-injury employer, the consultant concluded that Simons was employable at Reserve Street Pet and Food Supply/A-1 Grooming.

Dr. Burton performed an independent medical examination of Simons on behalf of the State Fund on August 12, 1992. He concluded that Simons' left shoulder was impaired and the disability caused by the injury would make it difficult for her to

work as a dog groomer. He later recanted that conclusion based on evidence that the Workers' Compensation Court found inadmissible. The Workers' Compensation Court excluded certain portions of Dr. Burton's deposition testimony because he was shown a tape of Simons grooming her horses which had not been disclosed to the claimant and because he based a portion of his testimony on a tape of someone--whom he incorrectly assumed was Simons--grooming a standard poodle. The court stated its belief that "reliance upon Dr. Burton's changed assessment . . . would be unfair" and that it was proper to give greater weight to the physician with the greater knowledge of the claimant's condition--in this case, the treating physician.

The parties stipulated that Simons injured her left arm and shoulder on June 20, 1991, while lifting a fifty-pound poodle while at work. The State Fund has paid medical expenses and $747.50 in permanent partial disability benefits to Simons for her left shoulder. It contested the amount of temporary benefits, contended that Simons was not entitled to permanent and rehabilitative benefits, argued that a preexisting left shoulder problem was the cause of the problem and contended that the injury had not resulted in any disability that prevented a return to dog grooming as an occupation.

The Workers' Compensation Court found in favor of Simons. The findings and conclusions referred to both the dog grooming and horse exercising videotapes as admissible. After that decision, the State Fund requested the Workers' Compensation Court to amend all findings and conclusions that were based on the inadmissibility

5

of the dog grooming videotapes and requested additional findings and conclusions that allowed for the consideration of Dr. Burton's testimony based on the dog grooming videotape. The court denied the request because it involved the videotape that led to Dr. Burton's mistaken assumption that the claimant was the dog groomer depicted in the videotape. The court amended certain findings and conclusions which incorrectly labeled the dog grooming tape as "inadmissible" in its findings.

The court reviewed the record and amended several findings and conclusions, but again determined that Simons had met her burden of proof by establishing by a preponderance of the probative, credible evidence that she suffers a disability due to her shoulder injury. Further facts will be provided as necessary throughout the remainder of this opinion.

## I.

Did the Workers' Compensation Court err in excluding a previously undisclosed surveillance tape from evidence at trial?

The State Fund contends that the Workers' Compensation Court erred when it excluded videotapes and the expert testimony which was based on the videotapes. The videotapes excluded from evidence showed Simons performing various grooming and exercising activities with her horses. One of the videotapes was a lengthy surveillance tape filmed by her former employer without her knowledge. The other tape was an edited version of the first surveillance tape which also showed Simons performing activities. The second surveillance tape excluded the time periods in the first tape when Simons was performing no physical activity and is substantially

shorter than the unedited version.

Dr. Burton, the independent medical examiner, had initially concurred with Dr. Moseley, Simons' treating physician. He later changed his mind after viewing a surveillance videotape and a dog grooming videotape provided by the State Fund for purposes of his expert medical opinion.

Dr. Burton was deposed during the one-day recess of the trial. The Workers' Compensation Court refused to admit the surveillance videotape and portions of Dr. Burton's testimony which related to that videotape because the videotape had not been listed as an exhibit in the Pretrial Order pursuant to the requirements of § 24.5.318(5)(g), ARM.

Section 24.5.318(5)(g), ARM, requires disclosure of substantive exhibits intended to prove a material point in issue. Although the court refused to allow the videotape into evidence because the State Fund had not disclosed it prior to the trial, it did allow the testimony of a former co-employee who testified to the contents of the videotape in a manner unfavorable to Simons. The Workers' Compensation Court stated:

> I frankly am not an advocate of surveillance tapes unless they can document that a claimant is essentially giving inconsistent stories [or verbal claims] which are inconsistent with what he or she is doing physically.

The State Fund contends that the videotape demonstrates such inconsistencies between Simons' stories and her physical actions. It contends that the surveillance videotape was to be used as proper impeachment evidence and, thus, did not require disclosure. It further contends that the desired effect of impeaching the

credibility of the witness requires nondisclosure of such evidence. According to the State Fund, the fact that impeachment evidence focuses on substantive issues--as is the case here--does not change its impeachment character: the primary purpose of the videotape was to demonstrate Simons' ability to do tasks which she claimed an inability to perform.

The State Fund further argues that the outcome of this case was entirely dependent on expert medical testimony to determine whether Simons' shoulder condition precludes her from employment as a dog groomer and that the medical testimony is entirely dependent on Simons' statements to the medical providers. The State Fund asserts that Simons' credibility should be the main focus on appeal and, thus, the impeachment evidence was crucial. We disagree.

The record contains substantial evidence specifically supporting the objective nature of certain medical findings. In this case, the Workers' Compensation Court excluded the videotape because it portrayed Simons engaged in activities which she said she could perform on a limited basis. It did not impeach her credibility as is argued by the State Fund; rather, it verified portions of her testimony. We conclude that the surveillance videotape was intended to contradict other testimony and, thus, was direct evidence and subject to the requirements of § 24.5.318(5)(g), ARM. We conclude that the State Fund's failure to list the evidence in the pretrial order resulted in the proper exclusion of the evidence.

Counsel for State Fund argued at trial that in addition to its character as impeachment evidence, the surveillance videotape was

also rebuttal evidence. On appeal, she concedes that the tape was not proper rebuttal evidence. She states that she was unable to lay the foundation for the introduction of the surveillance videotape because medical depositions were taken during a one-day recess of the trial. Counsel further states that the order of presentation of evidence should be relaxed in workers' compensation cases as procedural irregularities often occur (like the one-day postponement here). However, that is not within this Court's purview. The legislature has spoken to this issue and has directed that the Workers' Compensation Court is bound by the common law and the statutory rules of evidence. See § 39-71-2903, MCA.

Decisions on the admission of evidence are discretionary trial administration issues and, as such, are subject to review for abuse of discretion. Steer Inc. v. Department of Revenue (1990), 245 Mont. 470, 475, 803 P.2d 601, 603. We conclude that, without prior disclosure, the substantive nature of the surveillance videotape required the Workers' Compensation Court to deny its admission at trial.

We hold the Workers' Compensation Court properly exercised its discretion when it excluded the surveillance videotape from evidence because it was undisclosed direct evidence and not impeachment evidence.

II.

Did the Workers' Compensation Court err in giving greater weight to the testimony of the treating physician than to the testimony of the State Fund's expert?

The Workers' Compensation Court concluded that the testimony of Simons' treating physician, Dr. Moseley, merited greater weight

9

than that of Dr. Burton who performed an independent medical examination of Simons. The court concluded that Dr. Moseley had the greater knowledge of Simons' condition and, accordingly, his testimony carried greater weight.

Dr. Moseley was Simons' treating physician for the June 20, 1991 injuries. State Fund contends on appeal that fairness requires that Dr. Burton's testimony be given more weight than Dr. Moseley's opinions because Dr. Burton has greater knowledge about Simons' physical condition and abilities, about her medical history, and about the physical requirements of dog grooming. Dr. Burton had been Simons' treating physician at a previous time when Simons had suffered prior injury in her left shoulder and neck in an automobile accident.

This Court reviews the findings and conclusions of the Workers' Compensation Court by determining whether there exists substantial credible evidence to support them. Hash v. Montana Silversmith (1993), 256 Mont. 252, 257, 846 P.2d 981, 984. However, where medical testimony is offered by deposition, this Court may review and reweigh the medical deposition testimony. McIntyre v. Glen Lake Irr. Dist. (1991), 249 Mont. 63, 67, 813 P.2d 451, 454.

Dr. Burton's initial assessment agreed with Dr. Moseley's opinion. This was based on both his prior treatment of Simons and his independent medical examination conducted subsequent to the June 20, 1991 shoulder injury on August 12, 1992. It was only after State Fund showed Dr. Burton additional videotapes that Dr. Burton revised his opinion.

10

One of the videotapes was the shortened version of the inadmissible surveillance videotape of Simons grooming her horse discussed in Issue I above . The other tape was a demonstration of a woman grooming a standard poodle which had been prepared by Simons' counsel. This videotape depicted the woman carrying a fifty-pound poodle around a grooming shop. Dr. Burton mistakenly believed that the woman demonstrating the grooming of the standard poodle in that tape was the claimant. After viewing these tapes and after having a discussion with State Funds's vocational rehabilitation consultant, Dr. Burton revised his opinion of Simons' abilities.

After the State Fund filed its petition for a rehearing, the Workers' Compensation Court issued its Order on Defendant's Motion for Rehearing, stating as follows:

> The claimant has met her burden of proof by establishing by a preponderance of the probative, credible evidence that she does in fact suffer a disability due to her shoulder injury. This Court generally gives deference to the opinion of the treating physician. In the present case, the treating physician was Dr. Moseley and he concluded that the claimant's shoulder condition was compatible with her accident. Further, that opinion is consistent with Dr. Burton's initial conclusion reached after he conducted an independent medical examination. Dr. Burton initially concluded that the claimant suffers a disability due to her shoulder injury.

> The Court still believes that it is proper to give the most weight to the opinion of the treating physician in circumstances of the present case. Dr. Burton's initial assessment change[d] after viewing the horse lunging tape and two dog grooming tapes. In one of the dog grooming tapes, Dr. Burton incorrectly assumed that the person doing the grooming was the claimant. Under such circumstances, the Court does not find sufficient justification for departing from the standard of deferring to the treating physician. . . .

11

. . .

Conclusion of Law No. 2, paragraph number 7 on page 12 is amended to read as follows:

. . . The vocational rehabilitation counselor's opinion was based on the limited information provided by the claimant's time-of-injury employer.

Conclusion of Law No. 2, paragraph 10 on pages 12-13 is amended to read as follows:

The Court is somewhat limited in its consideration of the medical evidence. <u>Given the fact that the independent medical examiner, Dr. Burton, initially concluded that the claimant has an impairment or disability due to her shoulder injury and later recanted that conclusion based on an inadmissible videotape and an incorrect assumption as to the identity of a dog groomer in a separate videotape, the Court believes that it would not be proper to give Dr. Burton's second assessment more weight than that of the treating physician</u>. (Emphasis supplied.)

We agree with the determination of the Workers' Compensation Court that it would be improper to apportion greater weight to Dr. Burton's testimony under the circumstances of this case. Although the Workers' Compensation Court noted that the evidence preponderated in favor of Simons by the "narrowest of margins," we conclude that the record contains substantial credible evidence to support that conclusion.

We hold the Workers' Compensation Court did not err in giving greater weight to the testimony of the treating physician than to the testimony of the State Fund's expert.

### III.

Did the Workers' Compensation Court err in denying attorney fees, costs and a 20% penalty?

On cross-appeal, Simons contends that she is entitled to attorney fees and costs under §§ 39-71-611 and 612, MCA, and that

12

she is entitled to a 20% penalty under § 39-71-2907, MCA. At a minimum, according to Simons, costs should be awarded in this action as costs can be awarded without a finding of unreasonableness.

Section 39-71-611, MCA, mandates an award of costs if the insurer denies liability and the claim is later adjudged compensable. Costs are not mandated in a case such as this one where the insurer accepts liability. Attorney fees are also awarded if the Workers' Compensation Court determines that the insurer's conduct was "unreasonable."

Section 39-71-612, MCA, allows discretionary awards of attorney fees and costs when the amount of an award is controverted and the Workers' Compensation Court later grants a larger award than that paid or offered by the insurer. Like § 39-71-611, MCA, attorney fees may not be awarded to the claimant unless the court has determined that the insurer's actions were "unreasonable."

Section 39-71-2907, MCA, allows the Workers' Compensation Court to penalize the insurer by awarding 20% more than the full amount of benefits due a claimant when the court determines that there has been unreasonable delay or refusal to make payments.

For an award of a 20% penalty, unreasonable conduct refers and is limited to delay or refusal to make payments. Simons contends that the State Fund did in fact act unreasonably in denying her benefits as the court's final judgment awarded permanent partial disability benefits of $747.50, wage supplement benefits of $91.39 per week for 495 weeks, temporary total disability benefits of $4,974.10 which covers 24.29 weeks, and total rehabilitation

13

benefits of $2,574.09 which covers 12.57 weeks.

A threshold finding of "unreasonable" conduct on the part of the insurer is necessary in this case for an award of costs and attorney fees. This is not limited to delay or refusal to make payments. The State Fund characterizes this as hinging on whether appellants have acted reasonably in defending Simons' claim for workers' compensation benefits.

State Fund argues that a defense in this case was both reasonable and essential because Simons had asked for much more than she was awarded and because her claim was "overreaching." Simons counters that argument by contending that the question of whether the State Fund acted unreasonably has nothing to do with the amount of benefits which were asked for and the amount subsequently awarded to the claimant by the Workers' Compensation Court. We agree and also note that a defense is not reasonable merely because the insurer deems it is necessary to defend a claim. Unreasonable conduct on the part of the insurer also refers to the manner of conducting that defense.

As set forth above, factual findings made by the Workers' Compensation Court are reviewed to determine whether there is substantial credible evidence in the record to support them. Simons contends that the State Fund has acted unfairly and unreasonably throughout this action. In addition to delay and refusal to make payments, she points out numerous particular examples of alleged unreasonable conduct. This includes the State Fund's refusal to acknowledge that cash payments were made to Simons by her employer on a weekly basis which would raise the

14

amount of temporary total disability payments and failure to investigate Simons' claim that she was receiving the incorrect amount of temporary total disability benefits. Simons contends that defense counsel set up an elaborate "sting" operation so that the employer could film her preparing her horse to show to a purported buyer and then attempted to improperly use the evidence at trial. She also cites the State Fund's refusal to refer her to the rehabilitation panel after she was given a permanent impairment rating and had reached maximum healing. Simons emphasizes the insurer's refusal to pay wage supplement benefits when she went back to work at a minimum wage job, despite the fact that the treating physician determined Simons had suffered permanent injury and gave her an impairment rating. She also stresses defense counsel's conduct in conjunction with Dr. Burton's examination and concurrence with Dr. Moseley and the State Fund's continued denial of benefits despite the fact that Dr. Burton agreed with Dr. Moseley.

The State Fund objects to Simons' reference to matters outside the record--the "sting" operation--and contends that a defense was necessary and reasonable.

The court's Conclusions of Law contain the following statement:

> The Court has been hindered throughout this case by the convenient forgetfulness of the parties, disappearance of key bits of evidence and the self-serving testimony by the parties. The Court reaches the conclusion that neither party is credible and both parties have been less than candid with the Court. The present case epitomizes Webster's definition of a dog-and-pony show.

We conclude that there is substantial credible evidence in the

15

record to support this conclusion and the Workers' Compensation Court's further conclusion that the insurer's conduct in this case was not unreasonable.

A finding of "not unreasonable" is not the equivalent of reasonable conduct which should serve as an example for future cases. This case is an unfortunate example of questionable conduct on the part of the employer, the claimant and counsel for the insurer. Unfortunately, this conduct did not cease after the Workers' Compensation Court issued its judgment. The less than straightforward presentation and occasional distortion of facts in the record--which was characteristic of the State Fund's brief's on appeal--is inappropriate and does not facilitate the appellate process.

We hold the Workers' Compensation Court did not err in denying the claimant an award of attorney fees, costs and a 20% penalty.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

16