2003 OK CIV APP 37

**Christina Thomas WILLIAMS, Petitioner,**

v.

**HORMEL FOODS CORPORATION and Zurich American Insurance Company, Respondents.**

No. 98,227.

Court of Civil Appeals of Oklahoma, Division No. 4.

March 18, 2003.

Kenneth L. Wood, Lisa J. Stafford, Boettcher, Ryan, Martin & Bisher, Oklahoma City, OK, for Petitioner.

Tenal S. Cooley, III, Looney, Nichols & Johnson, Oklahoma City, OK, for Respondents.

Opinion by JERRY L. GOODMAN, Presiding Judge:

¶ 1 This is a proceeding to review an order of a Workers' Compensation Court three-judge panel which affirmed an order denying the claimant's request for temporary total disability benefits and medical treatment. The issue is whether the trial court's reliance on the opinion of the court-appointed independent medical examiner was error because the examiner based his opinion in part on inadmissible evidence. The claimant argues the trial court erred as a matter of law in admitting the examiner's report into evidence. Based upon our review of the record and applicable law, we sustain the order in part, vacate it in part, and remand the matter for further proceedings.

## I

¶ 2 Claimant Christina Thomas Williams injured her back February 13, 2001, when she picked up a large box of chicken pot pies to place on a pallet during the course and scope of her employment as a line worker for employer Hormel Foods Corporation. She said she reported the injury to the company nurse who provided her with medication. She continued to work without interruption.

¶ 3 In July 2001, the claimant reported to the factory clinic to meet the on-site medical administrator. Based on the claimant's oral history, the administrator referred her for medical evaluation. On July 10, 2001, the claimant sought and received medical treatment for pain allegedly associated with the February injury. The examining physician recommended light-duty work with restrictions on lifting, pushing, pulling, reaching and bending. The claimant returned to various light-duty assignments designed to accommodate her physical restrictions but she complained that each assignment caused her

pain so she was unable to perform the light-duty assignments.

¶ 4 On July 12, the claimant sought medical attention from another physician who concluded that the claimant was temporarily and totally disabled from the date of examination, was unable to work, and would be under the doctor's care for an indefinite period.

¶ 5 On November 28, 2001, the claimant was evaluated by a court-appointed independent medical examiner to whom the employer had supplied a videotape of a re-enactment of the light-duty assignment the claimant was unable to perform. The employer also provided the examiner with videotapes recorded on July 14, and 15, 2001, showing the claimant engaged in physical activity. After taking the claimant's oral history, examining her, and viewing the videotapes, the doctor concluded that the claimant was capable of returning to work. Specifically, the IME stated:

> In summary, this lady's neuromuscular examination today is essentially within normal limits.
>
> Review of surveillance video provided by Mr. Tenal Cooley dated July 14, 2001, and July 15, 2001, reveals Christina Williams being very active around a church site where she was sweeping and using what appears to be a snow shovel to bend forward, lift this and put it in a trash can, and do this repeatedly. She was quite active with her arms, not indicating any pain and very active with her back, and not indicating pain on these videos.
>
> At this time I am awaiting films of the lumbar MRI scan and the report.
>
> It would appear from the significant activity demonstrated by Ms. Williams within 48 hours of being placed on TTD by Dr. Brant, that she was very capable of using her arms without appearance of pain and the low back.
>
> In regards to questions to be answered to the court, in the opinion of this examiner, Ms. Williams is quite capable of returning to at least moderate work duties. It is further my opinion that she was not TTD from the date of July 12, 2001, when I reviewed the activity demonstrated on the surveillance video of July 14, 2001. It is further my opinion that this claimant is not in need of additional medical treatment.

Thereafter, the IME was provided with an MRI which had been performed on the claimant's lumbar spine. He noted that the claimant had "degenerative disk disease without herniation," and concluded that "[t]here is nothing in my initial report that would be amended based on review of this MRI scan."

¶ 6 Upon receipt of the IME's evaluation, the employer tried unsuccessfully to inform the claimant that she needed to contact the employer about returning to work. Thereafter, the employer mailed a certified letter to the claimant telling her she needed to contact the employer. The claimant replied and reported she was going to see another doctor. She returned to work January 25, 2002, under a doctor-ordered light-duty restriction. The claimant was given a job within her restrictions, but said the job hurt her back. She left after approximately 45 minutes and did not return to work.

¶ 7 On April 11, 2002, the trial court held a hearing on the claimant's request for temporary total disability benefits commencing July 12, 2001, and additional medical treatment. The claimant testified and presented the narrative report of her medical expert who concluded that the claimant "has been temporarily, totally disabled from July 12, 2001 ... and will be so for an indefinite period [and] will be under my care for an indefinite period to undergo medical treatment including physical therapy and medication...."

¶ 8 The employer presented the testimony of its on-site medical administrator who testified regarding the steps he took modifying various work requirements to accommodate the claimant's physical restrictions. Thus, the employer argued it had fulfilled its obligation to offer the claimant light-duty work which accommodated the claimant's medical restrictions. The employer's medical expert concluded that any period of temporary impairment had ended, and that the claimant had not sustained any permanent impairment as the result of a work-related injury.

¶ 9 In an order filed June 10, 2002, the trial court denied the claimant's request for temporary total disability benefits and additional medical treatment. In relevant part, the court stated:

[The employer's] light duty defense is sustained. Moreover, the Court found the videotapes and [the independent medical examiner's] reports particularly significant on consideration of the issue of claimant's request for temporary total disability and medical treatment.

The claimant seeks our review.

## II

¶ 10 The claimant contends the trial court erred in relying on the report of the independent medical examiner because, in reaching his conclusion, he relied in part on surveillance videotapes which were improperly admitted into evidence. The argument is that the employer failed to comply with Workers' Compensation Court Rule 55, 85 O.S. Supp.2002, ch. 4, app., when it delivered the videotapes to the independent medical examiner. Rule 55 states, in relevant part:

D. A party may present a videotape, audio tape or photograph to the Court appointed independent medical examiner or Court appointed vocational evaluator for review *only if approved by order of the Court,* prior to the submission of the videotape, audio tape or photograph to the independent medical examiner or vocational evaluator. If presentation of such evidence to the independent medical examiner or Court appointed vocational evaluator is not by agreement of all parties, the party wishing to present same *shall request a Prehearing Conference.*

1. The charges of the independent medical examiner for reviewing videotapes, audio tapes or photographs for preparation of reports or at a deposition or for review in preparation for a deposition are subject to and controlled by Rule 44.

2. A party who obtains a Court order to present photographic, audio tape or videotape evidence to the independent medical examiner must provide copies of said evidence to all parties for their review at least three (3) days before presentation to the independent medical examiner.

E. If a party is found to have willfully violated the provisions of this rule, the Court may exclude the party's videotape, audio tape or photographic exhibits, the independent medical examiner's report and/or deposition, and may impose other appropriate penalties or sanctions requested by opposing parties. (Emphasis added.)

¶ 11 The videotapes in question were filmed July 14, 15, and 21, 2001, without the claimant's knowledge or consent. One tape allegedly showed the claimant engaged in what the IME characterized as "significant" physical activity immediately after she had been declared temporarily and totally disabled, and another showed a person performing a job similar to a light-duty job the claimant said she had been unable to perform. It is undisputed that the employer provided the tapes to the IME without a court order or prehearing conference as dictated by Rule 55. At trial the claimant objected to admission of the IME's report based on violation of Rule 55. The employer responded that its records reflect that it did mail a copy of the surveillance tapes to the claimants' attorney, which the attorney said he did not receive. When the employer was notified that the claimant's attorney had not received the tapes—presumably after the attorney received a copy of the IME's report which recited that the IME had viewed the tapes—the employer had another copy made and sent to the claimant's attorney. When the trial court asked the claimant's attorney what the claimant's prejudice would be, he replied:

Well, if we would have had an opportunity to review the videotapes before [the claimant] saw [the IME] there could have been some explanations that would have been given during the physical examination that he didn't have the privilege to do. If he was going to see those videotapes and during her interview, he could have asked her about those. Apparently, he did not do that because she was unaware of them. And if she would have known there was

something on there, as she testified earlier, she said she took a pain pill around that time, there could have been some other explanations for what he characterized as strenuous activity.

The trial court denied the objection, finding "there was an effort to comply with the rule...."

¶ 12 Rule 55 is not merely a procedural rule orchestrating the orderly exchange of information between the parties. Rule 55 is designed to protect the substantive rights of the parties by assuring that the IME is not unfairly influenced by evidence provided to the IME outside the process dictated by the rule. Although the sanctions expressed in subsection E are permissive, the provisions expressed in subsection D are mandatory— the designated type of evidence may be provided to the IME "only if approved by order of the Court prior to the submission of the videotape" to the IME. And, if one party objects to submitting the evidence, "the party wishing to present same shall request a Prehearing Conference." It is undisputed that the employer did neither. If the mandatory procedure had been followed, the IME may have nonetheless reached the same conclusion based upon the same evidence. We cannot say. The facts in the case in controversy graphically demonstrate the potential for prejudice that Rule 55 is designed to prevent.

¶ 13 We hold the trial court erred as a matter of law in admitting the IME's report. The matter is remanded with directions to conduct further proceedings to determine the claimant's status between July 12, 2001, when she was declared temporarily and totally impaired, and January 25, 2002, when she reported to work under physical restrictions and was offered a light-duty job assignment consistent with those restrictions. If the trial court uses an IME for an opinion, the court must appoint a successor whose opinion has not been tainted by the improperly admitted evidence.

### III

■ ¶ 14 The claimant also contends the trial court erred in sustaining the employer's light-duty "defense." She argues that no competent evidence supports the conclusion that the employer offered her light-duty job assignments. As a result, she contends no competent evidence supports the denial of her claim for temporary total disability benefits after January 25, 2002, when she reported to work with physical restrictions dictating that she limit herself to light-duty work. We disagree.

■■ ¶ 15 An employer has the burden of proving that light-duty work was available to the injured employee, and that the employer notified the claimant of that availability. *Hinton v. Labor Source,* 1998 OK CIV APP 2, 953 P.2d 358. We have examined the record, and find that competent evidence supports the trial court's determination that the employer satisfied its responsibility of offering the claimant light-duty work within the limitations of her physical restrictions. The employer's on-site medical administrator and health tech testified in detail regarding the objective modifications he implemented in different employment activities in order to accommodate the claimant's physical restrictions. The claimant testified the modified light-duty assignments nonetheless caused her pain, and therefore were not within her medical restrictions. The trial court, however, had the benefit of weighing the credibility of the witnesses and assessing the value of their testimony. Our responsibility is not to weigh the evidence, but to examine the evidence to determine whether the trial court's holding is supported by competent evidence. *Parks v. Norman Mun. Hosp.,* 1984 OK 53, 684 P.2d 548. We have examined the appellate record, and find the trial court's determination is supported by competent evidence and therefore the employer is not liable for temporary total disability benefits after January 25, 2002.

### IV

¶ 16 We hold the trial court erred as a matter of law in admitting into evidence the reports of the IME over the claimant's Rule 55 objection. The matter is remanded for

further proceedings to determine the claimant's eligibility for temporary total disability benefits between July 12, 2001, and January 25, 2002, and her request for additional medical treatment. All evidence subject to the provisions of Rule 55 shall be submitted in strict compliance with the rule. In all other respects, the order is supported by competent evidence, and those portions of the order are sustained.

¶ 17 SUSTAINED IN PART, VACATED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.

REIF and RAPP, JJ., concur.