875 A.2d 251 (2005)
378 N.J. Super. 155
Danielle GROSS, Petitioner-Respondent,
v.
BOROUGH OF NEPTUNE CITY, Respondent-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted May 17, 2005.
Decided June 10, 2005.
*252 Connell, Connell & Camassa, Manasquan, for appellant (Ronald S. Yuro, of counsel; R. Peter Connell and Mr. Yuro, on the brief).
Shebell & Shebell, Ocean Tp., for respondent (Danielle S. Chandonnet, on the brief).
Before Judges STERN, COBURN and WECKER.
The opinion of the court was delivered by
COBURN, J.A.D.
An administrative regulation governing discovery in workers' compensation cases requires the employer to disclose in the pre-trial memorandum its intent to offer at trial any surveillance videotapes or films of the employee. The primary question presented by this case is whether the employer can avoid its obligation of notification by delaying surveillance without special justification until after the trial has begun and then offering the videotapes just before its last medical expert testifies. Our answer is no.
On January 15, 1999, petitioner, Danielle Gross, was injured while performing her assigned tasks as a police dispatcher for respondent Borough of Neptune City ("Neptune"). She filed a petition for workers' compensation in March 1999, and Neptune filed its answer in April. Neptune has not included the pre-trial memorandum in the record, but we know that it did not include a reference to surveillance materials since none existed when the trial began, as this colloquy between the judge and Neptune's counsel reveals:
THE COURT: By that I mean of course the respondent is not going to come in with a tape or anything and tell us the last day of trial that you have a tape or anything like that?
MR. EBNER: No, judge.
THE COURT: So there are no surprises.
MR. EBNER: No, judge.
Gross testified on the first day of trial, February 24, 2003. We will not describe her testimony because Neptune does not argue that the judgment was unsupported by the evidence.
Neptune's video surveillance began a few weeks later, on March 11, and was continued on March 14 and 21. On April 7, Gross's medical experts testified, but Neptune made no attempt to use the surveillance videotapes on cross-examination. Further surveillance videotapes were made on April 16, 18, 27 and 28. On May 19, Neptune's first medical expert testified, and again there was no reference to the tapes. Further surveillance videotapes were made on June 16 and 26; and on June 30, just before calling its last medical expert on what was scheduled to be the last day of trial, Neptune offered all of the tapes in evidence, while also proposing to have its medical expert testify about them.
The excuse given for the delayed taping was that Neptune's counsel did not realize until Gross testified that she was exaggerating her injuries. But, as the judge noted, long before trial Neptune's counsel had a report from his medical expert stating that Gross's injuries were far less serious *253 than her physicians had claimed in their reports. After a lengthy argument the judge refused to admit the videotapes into evidence. Neptune moved for reconsideration and for relief under the New Jersey Workers' Compensation Fraud Act, N.J.S.A. 34:15-57.4 ("Fraud Act").
The judge took additional testimony and viewed the videotapes in relation to the fraud claim. Ultimately, the judge rejected the fraud claim on the merits and awarded Gross $92,763 for her injuries plus appropriate allocations for fees and costs. Neptune appeals, and we affirm.
In any formal proceeding before the Division of Workers' Compensation (the "Division"), a pre-trial conference must be held and a pre-trial memorandum must be executed. N.J.A.C. 12:235-3.9(a). That rule requires the disclosure of surveillance materials:
4. A pre-trial memorandum on a form prescribed by the Division shall be executed.
i. Any party that intends to utilize videos or other electronic media, including surveillance tapes, must indicate that such media will be utilized at trial and identify the witness who will authenticate and testify concerning the materials to be presented in the "Other Witness" section of the pre-trial memorandum or as an addendum to the pre-trial memorandum. A party is not required to provide or exhibit electronic information, including surveillance tapes, to another party prior to the other party's testimony under oath.
ii. A party may move to amend the pre-trial memorandum to include any necessary changes including the introduction of electronic materials obtained subsequent to the pre-trial[.]
[Ibid.]
Similar discovery rules have led other states to consistently hold that an employer must give notice of video surveillance prior to trial to render the surveillance material admissible. Simons v. State Compensation Mut. Ins. Fund, 262 Mont. 438, 865 P.2d 1118, 1120-22 (1993); Williams v. Hormel Foods Corp., 67 P.3d 375, 378-79 (Okla.Civ.App.2003); Congleton v. Shellfish Culture, Inc., 807 So.2d 492, 495-96 (Miss.Ct.App.2002); Anzaldo v. Workmen's Compensation Appeal Board, 667 A.2d 488, 493-94 (Pa. Commw.Ct.1995); Williams v. Walt Disney World Co., 583 So.2d 794, 795 (Fla. Dist.Ct.App.1991).
Although the Division's rule expressly addresses discovery of pre-trial surveillance tapes, we think it implicit that surveillance tapes made after trial has begun would be inadmissible in the proceedings unless the employer can show that it was unaware, and could not have been aware, of the circumstances warranting surveillance before the hearing. As the judge noted in refusing to admit the videotapes, one of the problems caused by allowing the course pursued by Neptune in this case is that the employee would probably have to recall her medical experts. That would be financially burdensome and would unduly delay conclusion of the case.
Over a half century ago, in a workers' compensation case, we noted that surveillance films can give "deceptive impression[s]." Ferraro v. Zurcher, 12 N.J.Super. 231, 242, 79 A.2d 473 (App.Div.1951). The Division's rule was adopted, in part, to insure that employees have a fair opportunity to meet what can appear to be devastating evidence against them. To countenance what occurred here, withholding surveillance until after the trial has begun, would not only cause undue expense and delay  it would be inconsistent with the purposes of the rule and with a decent *254 respect for the notice requirement that is central to our concepts of due process and fundamental fairness. Therefore, we affirm the exclusion of the evidence in this case.
Neptune also argues that the judge erred in rejecting its post-trial claim for relief under the Fraud Act, and seeks a determination by us requiring Gross to reimburse Neptune for all monies she has received in this case. The claim is primarily based on the videotapes, but Neptune has not included them in the record submitted to us in violation of Rule 2:5-4 and Rule 2:6-1. Since we thus have no basis for disagreeing with the judge's determination that fraud was not proven, that determination is affirmed. It may well be that the discovery violation committed here and the belated reliance on the Fraud Act should have led the judge to refuse to view the tapes or consider the fraud claim. But we need not reach the issue in light of Neptune's failure to perfect the record.
Affirmed.